**CONSOLIDATED FILM INDUSTRIES,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. C 376–73.**

United States District Court,
D. Utah,
Central Division.

April 1, 1975.

Supplemental Opinion Aug. 29, 1975.

William T. Thurman, Salt Lake City, Utah, for plaintiff.

Ramon M. Child, U. S. Atty., Salt Lake City, Utah, for defendant.

## ORDER

ALDON J. ANDERSON, District Judge.

On December 5, 1974, defendant filed a Motion for Summary Judgment, and on December 6, 1974, plaintiff also filed a Motion for Summary Judgment, in the above-entitled action. The matter, having been fully briefed and argued by both sides, has been finally submitted and is presently ready for decision.

The facts of the transactions upon which the case is premised are complex and require some elaboration. Interwest Film Corporation, a Delaware corporation, obtained ownership rights in the film, "The Ra Expedition." As part of its marketing program, Interwest sold the film negative to the Lowell Berry Foundation (hereinafter referred to as Lowell Berry) on July 20, 1971, retaining the marketing rights to the film. At the same time, Interwest entered into a repurchase agreement with Lowell Berry for the film negative, with a schedule of periodic payments. In furtherance of its marketing program, Interwest entered into a contract for plaintiff Consolidated Film Industries (hereinafter CFI) to produce a number of film prints for use in distribution. CFI completed the production, which resulted in an obligation of $15,484.00 on the part of Interwest.

Interwest entered into an agreement with Inflight Motion Pictures under which Inflight would show "The Ra Expedition" on commercial airplane flights and Interwest would receive royalty payments. By stipulation of the parties, this agreement between Interwest and Inflight was entered into prior to September 1, 1972.

On June 19, 1972, the defendant United States made an assessment for unpaid federal withheld income taxes for the first quarter of 1972 in the amount of $56,548.98 against Interwest, and gave it notice of demand for payment. However, it was not until September 1, 1972, that defendant filed notice of a tax lien against Interwest. On September 25, 1972, defendant United States made an assessment for unpaid federal withheld income taxes for the second quarter of 1972 in the amount of $43,376.77.

On June 27, 1972, prior to the filing of the tax lien notice, Interwest assigned its interest in the indebtedness of Inflight from the Interwest-Inflight contract to Lowell Berry. On the same date, Interwest gave notice to Inflight of its assignment of the contract proceeds to Lowell Berry. Finally, on July 27, 1973, Lowell Berry assigned to plaintiff the gross proceeds owing by Inflight according to the terms of the Interwest-Inflight contract.

Inflight remains in possession of the monies, having paid neither Interwest, the United States, Lowell Berry, nor plaintiff CFI.

There are two primary issues in the case. First, does the assignment of the proceeds from the Interwest-Inflight contract by Interwest to Lowell Berry constitute a security interest within the scope of Article 9 of the Uniform Commercial Code as enacted in Utah. Plaintiff, as the successor in interest to Lowell Berry, claims that it does not constitute a security interest, and that, consequently, common law priority rules govern.

However, if the assignment is an Article 9 security interest, then the issue is who has priority under the UCC. Defendant claims that it has priority under Utah Code Ann. § 70A–9–301(1)(b) (1965), on the ground that plaintiff has an unperfected security interest, of which defendant did not have notice on September 1, 1972. However, plaintiff claims that the security interest was perfected under Utah Code Ann. § 70A–9–302(1)(e) (1965). Since Lowell Berry did not file a financing statement, the question is whether or not the security interest is perfected. Under § 70A–9–302(1)(e), a financing statement need not be filed for an assignment of contract rights which does not "transfer a significant part of the outstanding accounts or contract rights of the assignor." Thus, the second issue is whether the assignment in question came within the provisions of § 9–302(1)(e).

## I.

■ The first step of analysis is to determine whether the assignment of the proceeds due Interwest under the Interwest-Inflight contract constituted a "security interest" within the scope of Article 9. A "security interest" is defined in Utah Code Ann. § 70A–1–201(37) (1965), as including "any interest of a buyer of . . . contract rights which is subject to chapter 9." "Contract rights" are defined in Article 9 as "right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." Utah Code Ann. § 70A–9–106 (1965). In the same provision, "account" is defined as "any right to payment for goods sold or leased or for services rendered." Thus, since the contract with Inflight was not completed, the assignment to Lowell Berry involved a "contract right" which would be classified as a "security interest," unless, as plaintiff contends, it is excepted under Utah Code Ann. § 70A–9–104(f) (1965).

It is plaintiff's claim that the absolute assignment of a contract right for a past-due obligation does not result in a security interest, citing two cases for that proposition, *Spurlin v. Sloan*, 368 S.W.2d 314 (Ky.Ct.App.1963), and *Lyon v. Ty Wood Corporation*, 212 Pa.Super. 69, 239 A.2d 819 (1968). Although *Spurlin* dealt with the assignment of an account rather than a contract right, in theory its holding would be applicable in this situation. However, the decision in *Spurlin* has not been viewed favorably by many commentators, who deem its result as not justified by the Code's language. *See* White & Summers, Uniform Commercial Code § 23–8, at 806–07 (1972). Here, as in *Spurlin*, there was a clear sale or assignment of a contract right within the meaning of § 70A–1–201(37) and Article 9, unless excepted by § 70A–9–104(f). *See* White & Summers, Uniform Commercial Code, *supra* at 807.

■ Plaintiff's chief argument that the assignment is not governed by Article 9, however, rests on the provision of exceptions to the coverage of that article. *See* Utah Code Ann. § 70A–9–104(f) (1965). Section 9–104(f) provides that

This chapter does not apply . . .
(f) to a sale of accounts, contract rights or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts, contract rights or chattel paper which is for the purpose of

collection only, or a transfer of a contract right to an assignee who is also to do the performance under the contract.

As further guidance, the Official Comment to the Uniform Commercial Code, in describing the purpose of § 9–104(f), states that

[i]n general sales as well as security transfers of accounts, contract rights and chattel paper are within the Article. Paragraph (f) excludes from the Article certain transfers of such intangibles which, by their nature, have nothing to do with commercial financing transactions.

It appears that plaintiff does not claim that the assignment comes within the specific provisions of § 9–104(f), but that rather the *Spurlin* decision stands for the proposition that an assignment of a contract right in consequence of a past-due obligation, particularly when not in a pattern of financing, is within the spirit of the § 9–104(f) exceptions. There are two problems with that position. First, the fact that the assignment was predicated on a past-due obligation does not remove it from the arena of financing covered by Article 9. *See* White & Summers, Uniform Commercial Code § 22–8, at 777–78 (1972). And, second, the court cannot say that such an assignment as the one involved in this case has "nothing to do with commercial financing transactions." Moreover, the assignment from Interwest to Lowell Berry does not fit within the three specific exceptions set out in § 70A–9–104(f).

Plaintiff points out that the 1972 Proposed Amendments to the Uniform Commercial Code change § 9–104(f) to make the article inapplicable to a "transfer of a single account to an assignee in whole or partial satisfaction of a pre-existing indebtedness," which the Comment makes clear was done to bring about conformity of the provision with the results in *Spurlin* and *Ty Wood*. Plaintiff argues that the Amendment was simply clarification of the content of the present § 9–104(f). However, § 9–104(f) clearly prescribes a different result at present than the proposed amendment. The amendment operates to enlarge § 9–104(f), and the fact that the Comment indicates that the amendment was intended to achieve the *Spurlin* result implies that a change was in fact necessary to effect that result. Since Utah has not enacted the proposed amendments, the construction of Utah Code Ann. § 70A–9–104(f) (1965), is not changed by what appears to be the result preferred by the draftsmen of the Proposed Amendments.

Finally, a recent Tenth Circuit opinion holds, without elaboration, that the assignment of a contract right in fairly similar circumstances is a security interest, in apparent harmony with this result. *See United States v. Ed Lusk Construction Company*, 504 F.2d 328 (10th Cir. 1974). Thus, the assignment in question resulted in a security interest, whose priority is governed by the priority rules of Article 9.

## II.

The second issue is whether the assignment to Lowell Berry comes within the filing exception of Utah Code Ann. § 70A–9–302(1)(e) (1965) and is thus perfected. Section 70A–9–302(1)(e) reads as follows:

A financing statement must be filed to perfect all security interests except the following:

.    .    .    .    .    .

(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor.

The Comment to § 9–302(1)(e) states in part that

[t]he purpose of the subsection (1)(e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments: some accounts re-

ceivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The subsection (1)(e) exemptions go to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file. In this connection Section 9–104(f) which excludes certain transfers of accounts and contract rights from the Article should be consulted.

There have been two differing approaches or tests utilized by courts under § 9–302(1)(e). Several cases have looked to the casual or isolated nature of the assignment as the critical issue. *See Abramson v. Printer's Bindery, Inc.*, 440 S.W.2d 326 (Tex.Civ.App.1969). The other approach to § 9–302(1)(e) application has been to consider whether the assignment resulted in the transfer of a significant part of outstanding contract rights of the assignor. *See* White & Summers, Uniform Commercial Code § 23–8, at 808–09 (1972).

■ It is of concern to the court that there is no evidence in the file on what part of Interwest's contract rights the Inflight contract constituted. Hence, before final determination is made by the court, the parties are asked to file within 15 days an affidavit or other form of evidence reflecting what portion of Interwest's contract right was constituted by the Inflight contract. This Order should not be construed as necessarily indicating which analytical approach to § 9–302(1)(e) is preferred. Rather, it expresses the court's disposition to have all the information relevant to a determination of the action before it. Therefore,

It is hereby ordered that plaintiff file such matters with the court as set out above.

### SUPPLEMENTAL OPINION

On March 31, 1975, this court signed an order in the above-entitled matter re-solving all of the issues raised by joint motions for summary judgment with one exception. That remaining issue was whether the assignment by Interwest Film Corporation of a contract right to the Lowell Berry Foundation came within the filing exception of Utah Code Ann. § 70A–9–302(1)(e) (1965). Both parties have filed supplemental memoranda on the issue and additional affidavits have been filed. Although the factual background which the court had hoped to obtain on this final issue remains unsatisfactorily sparse, the case is ready for disposition.

The facts in this case have been sufficiently set out in the order of March 31, 1975. Section 70A–9–302(1)(e) of the Uniform Commercial Code as adopted by Utah provides for exceptions to the filing requirement to perfect security interests:

A financing statement must be filed to perfect all security interests except the following:

. . . . . . .

(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor. Utah Code Ann. § 70A–9–302(1)(e) (1965).

Thus, under that statutory prescription, the test for determining whether Lowell Berry Foundation was exempt from filing a financing statement on the assigned contract right from Interwest requires reference to the amount of contract rights owned by Interwest at the time of the assignment. In this case, however, the amount of outstanding contract rights owned by Interwest at the relevant time has not been presented in evidence. Interwest has been dissolved as a corporation, *see* Certificate of Dissolution (Filed August 4, 1975), and there are apparently no corporate records nor corporate officers from whom that information can be specifically or generally obtained. *See* Affidavit of William Thomas Thurman, ¶¶ 3, 4

(Filed May 15, 1975). Moreover, the defendant resists production of Interwest's tax records on the ground that the law prohibits their disclosure in a case where Interwest is not a party and has not authorized their release. *See* Letter from John J. McCarty to William T. Thurman, Jr. (Filed June 20, 1975). Thus, there is no direct evidence before the court as to the amount of Interwest's contract rights at the time of the assignment to Lowell Berry.

Plaintiff, however, has introduced the affidavit of Mr. Walter M. Ross, who was a vice-president of Lowell Berry at the time of the assignment and who received reports from Interwest concerning the financial picture of Interwest and the marketing progress of the film here involved, "The Ra Expedition," and another film being marketed by Interwest. *See* Affidavit of Walter M. Ross, ¶¶ 1–11, 14–17 (Filed May 15, 1975). Ross states that the reports he received indicated that Interwest had substantial success in marketing that film throughout the country during the relevant time period, grossing an estimated several million dollars. *See* Affidavit of Walter M. Ross, ¶ 10 (Filed May 15, 1975). Moreover, Ross states, from those reports, that the method of operation was for Interwest to enter into contracts with various theaters to show the films. *See* Affidavit of Walter M. Ross, *supra* at ¶¶ 9, 11. It is from this affidavit testimony that plaintiff hopes the court will draw an inference that Interwest possessed substantial contract rights during this period of which the Inflight contract was not a significant part. However, there are problems with drawing that inference. Ross' information is based on reports, the accuracy of which is not determined. There is also no evidence as to the approach used in the general practice of contractual relations between a film distributor and individual theaters. Thus, the court is wary to draw any conclusions as to the size of the outstanding contractual rights Interwest may have possessed at that time.

There are several factors, however, in this case which do support the plaintiff's position. First, assuming the exclusive test in determining whether the § 9–302(1)(e) exception applies is by reference to the amount of outstanding contract rights, the primary purpose for that test is certainty to creditors and debtors. It is that value of certainty which one set of commentators find to be the controlling reason for referring the test based on the relative amount of contract rights remaining after the assignment. *See* White & Summers, Uniform Commercial Code § 23–9, at 808–09 (1972). If certainty is the touchstone of that test, it relates to certainty for all prospective creditors, of which Lowell Berry was one. Lowell Berry apparently was given information that its assignment was not a significant portion of Interwest's contract rights, and it may have relied on that information in not filing a financing statement. Since, from the Ross affidavit, that reliance appears to have been reasonable, the touchstone of certainty would support Lowell Berry's action. Second, the Official Comment to § 9–302(1)(e) indicates the desire which the draftsmen had to exempt from filing requirements isolated transactions not in the general course of commercial financing.

The purpose of the subsection (1)(e) exemptions is to save from *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes many assignments which no one would think of filing may be subject to invalidation. The subsection (1)(e) exemptions go to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file. Countryman and Kaufman, Commercial Law, Selected Statutes, § 9–302(1)(e), Comment 5 (1971).

Apparently, Lowell Berry did not at that time regularly take assignment of contract rights or accounts. *See* Affidavit of Lowell W. Berry, ¶ 9 (Filed December 13, 1974).

While plaintiff argues that the court should look to the isolated or casual nature of the transaction, such a test, if applied exclusively, would fail to consider the express language of § 9–302(1)(e) directing the court's attention to the relative amount of outstanding contract rights. Moreover, the Official Comment to the Code has not been adopted by the Utah legislature as part of the legislative history of that section. However, the court has treated those comments in other instances as instructive guides to facilitate construction, and such limited consideration seems appropriate here.

■ Thus, reference should initially be had to the size of the assigned contract vis-a-vis the remaining contract rights of the assignor. However, when such reference is not dispositive, it does not seem appropriate to terminate the analysis at that point when there are other relevant factors to be considered. In this case, since there is no evidence to conclusively establish the amount of Interwest's outstanding contractual rights at the time, the § 9–302(1)(e) exception may operate where the assignee was not on either real or constructive notice of the substantiality of the assignment in relation to the rest of the assignor's contract rights or accounts *and* where the transaction was a casual or isolated transaction for the assignee. The court does not believe that this secondary test will undermine the need of certainty in this commercial financing area, since the operation of this secondary test will occur at best only infrequently. And although greater protection is perhaps provided for the inexperienced entrant in the world of commercial financing than to subsequent creditors, the conditions or elements of the test provide sufficient protection for the latter.

Under that test, Lowell Berry was an assignee who did not have notice of a small amount of contract rights (it had notice, rather, of a relatively substantial amount of remaining contract rights) and was not a regular commercial financer. Under the multi-factor, several stage test here employed by the court, Lowell Berry Foundation, and plaintiff as its assignee, come within the § 9–302(1)(e) exception and the security interest in the assignment is perfected without filing. Because of that perfection, plaintiff has priortiy over defendant. Therefore,

It is hereby ordered that defendant's motion for summary judgment be denied and that plaintiff's motion for summary judgment be granted.