**In re DRAPERY DESIGN CENTER, INC., Debtor.**

**Myron E. WASSERMAN, Trustee, Plaintiff,**

**v.**

**Robert and Minerva ALEXANDER, et al., Defendants.**

**Bankruptcy No. B87–00434(B). Adv. No. 87–0232.**

United States Bankruptcy Court, N.D. Ohio, E.D.

May 10, 1988.

Stephen D. Hobt, Cleveland, Ohio, for plaintiff.

Gerald A. Berk, Cleveland, Ohio, for Alfred Rigdon.

Susan M. Poswistilo Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, for the U.S.

Myron E. Wasserman, Cleveland, Ohio, trustee.

Steven S. Davis, Cleveland, Ohio, for debtor.

Joel Rathbone, Cleveland, Ohio, for Robert and Minerva Alexander.

David B. Hochman, Beachwood, Ohio, for Cash Management Resources, Inc.

Mary Ann Rabin, Cleveland, Ohio, for James M. Benner.

Richard Goulder, Cleveland, Ohio, for James Pinkston a lienholder.

Thomas C. Pavlik, Cleveland, Ohio, for Parma Schools Employees' Federal Credit Union.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the Trustee's complaint, as amended, to determine the validity, priority and extent of liens and/or interests and for authority to distribute funds. Following an evidentiary hearing with notice thereof having been made upon all entitled parties, a review has been made of the entire record, and pursuant to Rule 7052, Bankr.R., the following constitutes the Court's findings and conclusions:

### I.

This is a core proceeding under provisions of 28 U.S.C. 157(b)(2)(K), with jurisdiction further conferred under 28 U.S.C. 1334 and General Order No. 84 of this District. Following the filing of the subject voluntary Chapter 7 petition, Myron E. Wasserman (Trustee), *inter alia*, commenced the collection of certain accounts receivable owing to Drapery Design Center, Inc. (Debtor). As a result of his collection efforts, the Trustee collected $143,544.95 from the Debtor's prepetition accounts receivable. Another $62,647.30 in receivables remain uncollected. The parties Defendant to this adversary proceeding have claimed an interest in the accounts receivable collected, as well as in uncollected receivables. Among the several answering parties Defendant, a dispute arose among the claimants United States of America, on behalf of the Internal Revenue Service, (IRS), Robert and Minerva Alexander (Alexanders), Parma Schools Employees Federal Credit Union (Credit Union), and Al Rigdon. This opinion and order addresses that dispute and further provides authority for the Trustee to effect a distribution.

## II.

The dispositive issues for the Court's determination are threefold: (1) whether the assigned accounts receivable violated relevant provisions of the Anti–Assignment Act; (2) whether the assigned accounts receivable constituted security interests requiring perfection; and (3) whether the subject federal tax liens are superior to the nonfederal liens against the Debtor's estate.[1]

The disputed claims are as follows:

*IRS:*

In its Answer, the IRS asserted two tax claims, representing withholding and F.I.C.A. tax liabilities totalling $96,354.24. The tax liens thereon were duly filed on December 22, 1986 and on January 12, 1987, respectively, for tax liabilities incurred during the second and third quarters of 1986. Citing §§ 6321 and 6322 of the Internal Revenue Code, the IRS contends that the amounts assessed became liens as of the dates of assessments upon all of the Debtor's property, including the subject accounts receivable. It further contends that any assignments of Debtor's accounts receivable were made in derogation of 31 U.S.C. 3727 (Anti–Assignment Act), and that its lien is superior to any claims of Rigdon, the Alexanders, and the Credit Union.

*Alfred Rigdon:*

In his response to the Trustee's complaint, Alfred Rigdon (Rigdon) acknowledged doing business with the Debtor, as a factor, over an unspecified number of years whereby he would lend the Debtor money and in return would receive assignment of certain specified accounts receivable as repayment for the loans made to the Debtor. Without indicating how long such course of dealings lasted, Rigdon claimed that a total of $30,039.18 was due him on nine (9) assigned accounts dated from October 21, 1986 through and including January 26, 1987. In his reply brief, Ridgon conceded that the assignments of the accounts receivable were never recorded, but contends that nonbankruptcy law allowed an exemption to the requirement that the subject assignments be filed in order to be perfected. Rigdon therefore asserts that his interest in the accounts receivable is a secured interest. Alternatively, Rigdon contends that should the IRS's tax liens be accorded priority over other secured interests, only the IRS' first tax lien should enjoy that status, and not the second tax lien, since other intervening security interests were perfected prior to the IRS' filing of its second tax lien.

*Parma School Employees Credit Union:*

The Credit Union claims that the Debtor owes it $176,109.76, on certain promissory notes and accounts receivables. (*See,* Answer To Amended Complaint, filed September 4, 1987). That amount is purportedly owed by the Debtor for six (6) loans made by the Credit Union to the Debtor between December 2, 1985 through July 21, 1986. In payment of the loans, the Credit Union took an assignment of certain of the Debtor's contractual rights. Concededly, the Credit Union's interest was a security interest and no perfection was made respecting such assignment in accordance with U.C.C. requirements. (See Brief, filed December 16, 1987). The Credit Union contends that "[F]rom the funds collected by the Trustee, the sum of $7,700.00 is directly attributable to contracts in which [the Credit Union] had an assignment." Further, it contends that there are some $82,647.37 in uncollected accounts receivable which requires prioritization. The Credit Union further states that it is the sole owner of proceeds due from various contracts as of the date of its assignment from the Debtor. It also contends that nonbankruptcy law excused its assignment from filing requirements.

---

1. By stipulation, the parties have agreed that Defendant, Cash Management Resources, Inc., holds the first and best lien against the Debtor's accounts receivable. *See,* Order dated December 7, 1987. The Court also determined earlier that Defendants James Benner and James Pinkston do not have a valid claim against the accounts receivable. Further, default judgments were entered against Defendants Milloom Decorative Fabrics, Inc., Maharan Fabric Corporation, and Coral of Chicago, Inc.

*Robert and Minerva Alexander:*

The Alexanders represent that they are secured creditors of the Debtor and have a secured interest in its accounts receivable as evidenced by their having filed the necessary financing statements with the required state authorities. Their Answer indicates the Debtor owes them $51,213.71 for various loans. Their Amended Answer indicates that $100,427.17 is owed, and is evidenced by a perfected lien on proceeds of Debtor's accounts receivable. This amount is reflective of six (6) loans the Alexanders made to the Debtor for alleged sales bonuses owed, plus accrued salary.

### III.

■ First, attention is given to provisions of the Anti–Assignment Act (Claims Act) which is set forth at 31 U.S.C. 3727. In pertinent part, the following is noted:

31 U.S.C. 3727

(a) In this section, "assignment" means—

(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or

(2) the authorization to receive payment for any part of the claim.

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. . . .

The above language of 31 U.S.C. 3727 clearly indicates that the Claims Act concerns itself with claims against the federal government or with an interest in such claim. The matter at bar is not akin to the targeted concern addressed by 31 U.S.C. 3727. Herein, the subject claim assignments are not claims which have been filed against the United States or any part of an interest in such a claim. The Claims Act was enacted for the protection of the federal government against frauds and a multiplicity of conflicting claims. It was not promulgated to regulate the equities existing between individual claimants. Thusly, the United States' reliance on the Claims Act is misplaced. *See, In re Altek Sys-*

*tems, Inc.,* 14 B.R. 144, 149 (Bankr.N.D.Ill. 1981), *citing, Hobbs v. McLean,* 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940 (1886); *U.S. v. Aetna Surety Co.,* 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949); *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945). The Claims Act is not applicable to the matter, *sub judice. See also, Centron Corp. v. U.S.,* 585 F.2d 982 (Ct.Cl.1978).

■ The Court next turns its attention to prioritization of liens. Respecting the claims of Rigdon and the Credit Union, both assert that their claims are secured interests, and both concede that their respective secured interests were unperfected. Additionally, both claimants assert that nonbankruptcy law provides them with an exemption from the perfection requirements regarding their assignments. As for Rigdon, he acknowledged doing business with the Debtor as a factor over an unspecified number of years wherein he would loan funds to the Debtor in return for an assignment of certain of the Debtor's accounts receivable. Rigdon's claim for $30,039.18 is based on nine (9) unperfected assignments which date from October 21, 1986 through January 26, 1987. The Credit Union, on the other hand, claims that it is owed $176,109.76 by the Debtor on certain promissory notes and accounts receivable. As indicated above, that amount is allegedly owed by the Debtor for six (6) loans issued by the Credit Union to the Debtor between December 2, 1985 and July 21, 1986. As repayment on those loans, the Credit Union took assignments on certain of the Debtor's contractual rights, none of which were ever recorded.

Under Ohio Revised Code (O.R.C.) § 1301.01 (KK), a security interest is defined as being "an interest in personal property or fixtures which secures payment or performance of an obligation." Without question, the subject assignments taken by Rigdon and the Credit Union were security interests as such assignments were made with an intention to secure repayment of the loans made to the Debtor by these claimants. Further, under O.R.C. § 1309.02(B), the Ohio Revised Code ap-

plies to a security interest created by contract including pledge, assignment, or chattel mortgage.[2] Beyond that concern, it next must be determined whether those security interests were subject to the filing requirements for perfection. O.R.C. § 1309.21 [U.C.C. 9–302] addresses when filing is required to perfect a security interest and any applicable exceptions thereto. At O.R.C. § 1302.21(A), the following is provided:

(A) A financing statement must be filed to perfect all security interests except the following:

(5) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor. [U.C.C. 9–302(1)(e) ]

In order to determine whether the filing exemption allowed by the provisions of U.C.C. 9–302(1)(e) are applicable to Rigdon and the Credit Union, it becomes necessary to examine closely the underlying course of dealings respecting the subject assignments. Regarding the assignments made to Rigdon, it is observed that he received assignments during the course of an unspecified number of years. Rigdon did business with the Debtor as a factor. Rigdon's claim of $30,039.18 was based on nine accounts assigned to him by the Debtor, dating from October 21, 1986 through January 26, 1987. As such, the assignments made to Rigdon were neither casual nor isolated.[3] He engaged in multiple transactions with the Debtor. Further, the assigned accounts of Rigdon reflect an aggregate total claim of $30,039.18, which constitutes a significant part of the Debtor's outstanding accounts ($62,647.30). Thusly, Rigdon cannot claim an exemption from the filing requirements of U.C.C. 9–302(1), rendering his unperfected security interest subordinate to perfected security interests.

The Credit Union stands on no better footing than does Rigdon. Its underlying course of dealing regarding the Debtor's assigned accounts was neither casual nor isolated. Its claim of $176,109.76 relates to assigned notes and accounts receivable assigned by the Debtor to satisfy six (6) loans made by the Credit Union. The Credit Union's business is that of a financial institution. Further, the aggregate amount of the assignments as stated above constitutes a significant portion of the Debtor's outstanding accounts. Its transactions with the Debtor were multiple. Therefore, the Credit Union, likewise, has failed to successfully demonstrate that it meets the filing exception which is provided under U.C.C. 9–302(1)(e), rendering its unperfected security interest subordinate to those security interests which were perfected. The burden of proving that an assignment does not transfer a significant part of the outstanding accounts or contract rights of the assignor is on the party claiming the filing exemption. Herein, neither Rigdon nor the Credit Union met that burden.

### IV.

Next, the Court must determine a final prioritization in light of the above rulings. The two tax liens of the IRS totalled $96,354.24. Both liens were duly perfected and applied to all of the Debtor's property, including the accounts receivable. Its liens were filed on December 22, 1986 and on January 12, 1987, respectively. The Alexanders' amended Answer reflects a secured claim owed them by the Debtor for six loans. They executed a security agreement with the Debtor on January 12, 1987. Their lien was duly perfected on January 14, 1987 upon the proceeds of the Debtor's accounts receivable.

Accordingly, the United States possesses the first and best lien against the subject accounts receivable, followed by

---

**2.** O.R.C. 1309.02(A) [U.C.C. 9–102]: "Except as otherwise provided ... sections 1309.01 to 1309.50 of the Ohio Revised Code apply: (1) To any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts; ...."

**3.** *See,* Official Comments to U.C.C. 9–302(1)(e).

the Alexanders' perfected lien interest in an amount of $14,336.17. As stipulated, any remaining monies owed to the Alexanders will be treated as a general unsecured claim. As between Rigdon and the Credit Union, their entitlement is based on which party first transacted loans with the Debtor. *See,* O.R.C. § 1309.31(E)(2) [U.C.C. 9–312(5)(b)]. The Credit Union's loans were transacted with the Debtor between December 2, 1985 and July 21, 1986. Rigdon's loans were made between August and December, 1986. Therefore, the Credit Union has the prior unrecorded lien and, under the first in time first in right rule, the Credit Union would have distribution priority ahead of Rigdon.

IT IS SO ORDERED.