[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the Petition for Allowance and Payment of the Amended Secured Claim of US Filter Process Water Systems, Inc. (US Filter).
 FACTS/TRAVEL
Marandola Mechanical, Inc. (Defendant) is a Rhode Island corporation that provides heating and plumbing services. Anthony P. Marandola (Plaintiff) is president of Defendant. ADP Marshall, Inc. (Marshall), a general contractor, subcontracted with Defendant relative to the construction of the Amgen QAL Building in West Greenwich, Rhode Island (Project). In early 2003, Defendant contracted US Filter to design and provide a De-ionized Water Purification Skid (Material) for the Project in exchange for $351,328.82. US Filter furnished Defendant with the Material, and Defendant paid US Filter $60,620. A balance of $290,708.82 remains due.
On August 15, 2003, US Filter, Defendant, and Marshall entered into a "Joint Check Agreement." The Joint Check Agreement provides in pertinent part:
 "ADP Marshall, Inc. (`General Contractor') . . . agrees to make . . . all payments (not to exceed $278,500 in the aggregate) for materials furnished by USFilter [sic], Process Water Systems Inc. (the `Vendor') to Marandola Mechanical (`Subcontractor') for material to be built at Amgen QAL Building, West Greenwich, RI . . . by check made jointly payable to Subcontractor and Vendor. . . . General Contractor shall then deliver the joint check to Subcontractor; Subcontractor shall properly endorse the check to enable Vendor to receive the full amount thereof; and Subcontractor shall be solely responsible for delivery of the check to Vendor. . . . The Subcontractor agrees that any and all proceeds ultimately payable to Vendor, either by joint check or directly, shall not be considered as `accounts receivable' to Subcontractor, with regard to any present or future assignment of Subcontractor's receivables."
On November 13, 2003, Plaintiff filed a petition for appointment of a receiver, and on November 14, 2003, this Court entered an order appointing a temporary receiver. This Court ordered the appointment of a permanent receiver on December 9, 2003.
On March 25, 2004, US Filter filed a Proof of Secured Claim, and on or about April 8, 2004, it filed an Amended Proof of Secured Claim as well as its Petition for Allowance and Payment of the Amended Secured Claim (Petition). At no time, however, did US Filter file a financing statement.[1]
 US FILTER'S PETITION
US Filter propounds two main arguments in support of its Petition. First, US Filter asserts that pursuant to the Joint Check Agreement, Defendant sold and assigned to US Filter its "right, title and interest in and to any claim for payment under . . . Defendant's agreement with Marshall . . . up to the amount due US Filter under its agreement with Defendant" (Receivable).Petition at 2. US Filter further argues, essentially, that G.L. 1956 § 6A-9-109(d)(6) excludes the alleged assignment of the Receivable from coverage under Article 9 of the Uniform Commercial Code (UCC), and that as owner of the Receivable, US Filter possesses rights to the same that take priority over the rights of any other claimant. Id.
Alternatively, US Filter claims that the Joint Check Agreement effectuated an assignment of accounts under G.L. § 6A-9-309(2).Id. at 2, n. 1. Therefore, even if Article 9 applies to alleged assignment of the Receivable, the filing of a financing statement was unnecessary because US Filter's interest in the Receivable was automatically perfected. Id.
US Filter petitions this Court to allow its claim as a first-priority secured claim; to impose a constructive trust upon the Receivable; or to direct the receiver to pay US Filter's claim in full. Id. at 3. US Filter also urges this Court to utilize equitable tracing principles "[t]o the extent that the Receivable has been collected by the Receiver or . . . any creditor." Id.
Plaintiff objects to US Filter's Petition for Allowance and Payment, arguing that § 6A-9-109(d)(6) is inapplicable because the Joint Check Agreement did not effect an assignment and US Filter is not obligated to perform under the contract between Marshall and Defendant. Pl.'s Mem. in Supp. of Objection to USFilter's Pet. at 2. Plaintiff further asserts that the facts do not warrant an application of § 6A-9-309(2). Id. at n. 3.
I. Joint Check Agreement as an Assignment
To determine whether § 6A-9-109 or § 6A-9-309(2) applies to the case at bar, this Court must first determine whether the Joint Check Agreement effected an assignment.[2]
 A. Express Assignment
An assignment consists of "a transfer by the assignor to the assignee of all interests and rights in the assigned property."Flanders Medeiros Inc. v. Bogosian, 868 F. Supp. 412, 420 (D.R.I. 1994). It constitutes "an absolute and irrevocable transfer of ownership." Id. See also Restatement (Second)Contracts § 317(1) (defining an assignment of a right as "a manifestation of the assignor's intention to transfer . . . [the right] by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance").
A valid assignment requires two primary elements. SeeFlanders Medeiros Inc., 868 F. Supp. at 420. First, "the subject matter of the assignment . . . [must be] described so that it is readily identifiable." Id. Second, there must exist "clear evidence of the assignor's intent to transfer [his or] her rights." Id. To satisfy this second element, "the obligee [must] manifest an intention to transfer the right to another person without further action or manifestation of intention by the obligee." Restatement (Second) Contracts § 324. This manifestation of intent "may be made to the other or to a third person on his behalf and, except as provided by statute or by contract, may be made either orally or by a writing." Id.
"A manifestation of intention or a promise to make a transfer in the future is not an assignment." Id. at cmt. A. Furthermore, "[a] transaction that requires a further act to complete a transfer will not effect an assignment." In reGibraltar Resources, 211 B.R. 216, 220 (N.D. Tex. 1997). Finally, "[a] contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment." Restatement (Second) Contracts
§ 330(1). Accordingly, "[a] promise by an obligee that he will collect money due him and pay over all or part of it to the promisee is not an assignment." Id. at cmt. B.
While no Rhode Island case examines whether a joint check agreement effects an assignment, cases from other jurisdictions address the issue. Wolters Village Mgmt. Co. v. Merchants andPlanters Nat'l Bank of Sherman, for instance, concerned a joint check agreement between Wolters Village Management Company (Wolters), a general contractor, and Central Electric Company (Central), a subcontractor. Pursuant to the agreement, Wolters promised to make checks jointly payable to Central and Merchants Planters National Bank, a prospective creditor of Central.223 F.2d 793, 796 (5th Cir. 1955). The letter detailing the arrangement stated in relevant part: "We [Central] wish to extend an assignment of all monies . . . to Merchants Planters National Bank. . . . All checks for gross amount of contract $60,500.00, shall be made payable jointly to the Merchants 
Planters National Bank and Central Electric Company." Id. The Court, holding that the instrument did not effect an assignment, noted that the letter:
 "did not state `we have assigned' or `we hereby assign,' but `we wish to extend an assignment.' Thus it clearly contemplates some future act to complete the transfer of the right. . . . Consequently, the assignment was not made by means of this letter, but was completed later, in the transaction between Central and the Bank." Id. at 798.
See also In re Gibraltar Resources, 211 B.R. at 220 (holding that language such as "will be paid," "will receive," and "will be delivered" contained in a settlement agreement, letter, and stipulation did not effect an express assignment).
This Court finds that the Joint Check Agreement did not effectuate an express assignment. Defendant, at most, manifested an intention or a promise to make a transfer in the future of proceeds to be received in the future. The Joint Check Agreement states: the "General Contractor shall then deliver
the joint check to Subcontractor; Subcontractor shall properlyendorse the check to enable Vendor to receive the full amount thereof; and Subcontractor shall be solely responsible for delivery of the check to Vendor" (emphasis added). Similar to the instruments in In re Gibraltar Resources, the Joint Check Agreement utilizes the future tense, negating a present transfer of the Receivable. Furthermore, the Joint Check Agreement, like the letter in Wolters Village Management Co., requires further acts to complete the transfer; to wit, Marshall has to deliver the check to Defendant, Defendant has to endorse the check, and Defendant has to deliver the same to US Filter.
B. Equitable Assignment
In addition to recognizing an express assignment, courts acknowledge an equitable assignment. See e.g., Goodsell,Budillon Co. v. Robert Benson Co., 13 R.I. 225, 230 (1881) (discussing the equitable assignment); In re GibraltarResources, 211 B.R. at 221-22 (same).
"[A] court of equity constructs the [equitable] assignment out of the agreement and situation of the parties as shown by either direct or circumstantial evidence." In re Gibraltar Resources,
211 B.R. at 221. Two factors must exist for a court to find an equitable assignment. Id. at 222. First, "the agreement must evidence an intent to transfer the interest." Id. at 221. While construction of an equitable assignment requires no specific words or kind of instrument, it does demand sufficient evidence of an intent to assign. Id. at 222. Second, the transferor must completely relinquish control over the interest. Id. In other words, the assignor must be left with no control over the fund.Id.
 In re Gibraltar Resources, which discusses the application of these two factors, involved insurance proceeds that Lloyd's, London and London Companies (Lloyd's) were to pay to a debtor.Id. at 218. The debtor's creditors, in turn, claimed an interest in the insurance proceeds and demanded that Lloyd's pay them (the creditors) directly. Id. Lloyd's filed an interpleader action and paid the insurance proceeds into the court's registry. Id. Black Max Downhole Tools, Inc. (Black Max), however, a creditor, was neither named in the interpleader action nor included in the later agreed judgment. Id. Instead, Black Max entered into a settlement agreement with the debtor whereby the debtor would pay Black Max a portion of the proceeds that it would receive from the agreed judgment. Id. A letter instructed counsel for Lloyd's
 "to hold the checks received by your firm . . . and notify the appropriate party for . . . [the debtor] who will properly endorse their checks payable to the order of . . . [counsel for Lloyd's]. You are instructed to deposit such endorsed checks in your law firms [sic] trust account and immediately reissue a check payable to the order of Black Max. . . ." Id.
Based upon this language and the surrounding circumstances, the Court found the requisite intent to assign. Id. at 222. It stated, "The language of the Settlement Agreement, Letter, and Stipulation demonstrated an intent to transfer the funds to Black Max to satisfy Black Max's claims against the Debtor." Id. The court next discussed whether "the control exercised by the Debtor during the time of endorsement prevents the second element of an equitable assignment from being satisfied or postpones any equitable assignment until the endorsement date." Id. at 223. The court determined that the debtor had relinquished control of the funds, stating that "[t]he limited, temporary control exercised by the Debtor amounted to no more than mere physical control for the moment of check endorsement. This type and amount of control does not rise to a sufficient level of control to defeat the finding of an equitable assignment." Id. at 224-25.
Winkler Construction Co. v. Hornor Co., 580 S.W.2d 401, 402-03 (Tex.Civ.App. 1979), further discusses the second factor that courts require for an equitable assignment.[3] Winkler Construction Co. (Winkler), a general contractor, entered into a joint check agreement with Climate Control (Climate), a subcontractor, and Hornor Company (Hornor), a supplier.Winkler Construction Co., 580 S.W.2d at 402. According to a Hornor representative, during a phone conversation, Winkler agreed "to `consign' the amount owed to Climate . . . `on a joint payment between . . . [Hornor] and Climate. . . .'" Id. The Hornor representative allegedly told Winkler that a letter would follow. Id. Climate later took a letter to Winkler, asking that "the `check for . . . [the] draw be made payable jointly to Climate . . . and . . . [Hornor]. . . ." Id. In holding that an assignment existed, and distinguishing the case from WoltersVillage Management Co., the Court provided:
 "There can be no question that all details of the arrangement were completed at the time that the letter was delivered to plaintiff [Hornor]. Nothing further remained to be done in order to vest in plaintiff the right to the money in question. It is true that it would have been necessary, had defendant [Winkler] issued a check payable to Climate Control and plaintiff jointly, for Climate Control to endorse the check in order to enable plaintiff to receive the money; however, Climate Control had clearly become obligated to furnish such endorsement as the result of its agreement with plaintiff and had no right to withhold such endorsement. Because of its agreement with plaintiff, Climate Control lost the right to exercise a directing or governing influence over the money. The absence of a right to direct or manage amounts to an absence of the right to control." Id.
at 403.
This Court finds that the Joint Check Agreement effected an equitable assignment. The language of the Joint Check Agreement, coupled with the surrounding circumstances, demonstrates the requisite intent to assign. The Joint Check Agreement manifests an intent to transfer the Receivable to US Filter. Furthermore, Defendant has relinquished control of the Receivable. Like the endorsement in In re Gibraltar Resources, Defendant's endorsement constitutes only limited, temporary, and mere physical control, which is insufficient to defeat the finding of an equitable assignment. Moreover, as the instruments in WinklerConstruction Co., the Joint Check Agreement obligated Defendant to furnish the endorsement. Pursuant to the Joint Check Agreement, Defendant lost the right to exercise a directing or governing influence over the Receivable and, therefore, possesses no right of control.
II. Application of § 6A-9-109(d)(6)
Having determined that the Joint Check Agreement effectuated an equitable assignment, this Court must next ascertain whether the assignment of the Receivable falls within the scope of Article 9 or whether § 6A-9-109(d)(6) excludes the transaction from Article 9's coverage.
Subject to certain exceptions, Article 9 applies to, inter alia, "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract" and "[a] sale of accounts, chattel paper, payment intangibles, or promissory notes." G.L. § 6A-9-109(a)(1), (3). A "security interest," as defined by the UCC, includes "an interest in personal property or fixtures which secures payment or performance of an obligation" and "any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to chapter 9." G.L. 1956 § 6A-1-201(37).
Article 9 "does not apply to . . . an assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract. . . ." Section 6A-9-109(d)(6). In other words, Chapter 9 does not cover "the total assignment of a contract under which the assignee is to take over performance and receive payment." 1 Grant Gilmore, Security Interests in Personal Property § 10.5 (1965). The party asserting that a transaction does not come within the provisions of the UCC or falls within a statutory exception to the UCC, bears the burden of so proving.E. Turgeon Const. Co. v. Elhatton Plumbing Heating Co.,110 R.I. 303, 308, 292 A.2d 230, 234 (1972).
In effect, § 9-109(d)(6) makes Article 9 "inapplicable to certain transfers of accounts, contract rights and chattel paper which are not made in anything that could reasonably be described as a financing transaction." Gilmore, supra, § 19.6. As one authority explains the exception:
 "This transfer . . . is excluded because it . . . serves no financing function. When the assignee of the right to be paid money under a contract is also the delegatee of contract performance, he is, in large measure, taking over the business of his assignor. Viewed in this manner, it becomes clear that the assignee/delegatee is in a position similar to that of the buyer of a business who obtains the accounts of the seller as an incident of the sale. The chief difference, and one not justifying inclusion within Article 9, is that the assignor remains liable for a defective performance." 9A William D. Hawkland et al., Uniform Commercial Code Series § 9-104:7 (2003).
See also District of Columbia v. Thomas Funding Corp.,593 A.2d 1030, 1034 (D.C. 1991) (noting that Article 9 does not apply to "a transfer of a right to payment to one who is also obligated to perform under the contract" as "such a transaction has nothing to do with commercial financing transactions"); § 6A-9-109 at cmt. 12 (stating that "[p]aragraphs (4), (5), (6), and (7) of . . . [§ 6A-9-109(d)] exclude from the article certain sales and assignments of receivables that, by their nature, do not concern commercial financing transactions").
This Court finds that US Filter has not met its burden of proving that § 6A-9-109(d)(6) applies to exempt the subject transaction from the scope of Article 9. US Filter asserts, in passing, that it is obligated to perform under the contract because it must provide the Material for the Project. Petition
at 2. However, the right to payment arises under Defendant's contract with Marshall, and US Filter is not obligated to perform under that contract. Rather, US Filter's obligation to provide the Material originates from its contract with Defendant. Therefore, the subject transaction falls within the scope of Article 9.
III. Application of § 6A-9-309(2)
In general, "a financing statement must be filed to perfect all security interests and agricultural liens." G.L. § 6A-9-310(a). However, "[t]he filing of a financing statement is not necessary to perfect a security interest . . . [t]hat is perfected under §6A-9-309 when it attaches." G.L. § 6A-9-310(b). "An assignment of accounts . . . which does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts . . ." constitutes a security interest that perfects upon attachment. Section6A-9-309(2). An "account," as defined by the UCC, encompasses "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, [or] (ii) for services rendered or to be rendered." G.L. § 6A-9-102(a)(2).
The objective of § 6A-9-309(2) "is to save from ex post facto invalidation casual or isolated assignments — assignments which no one would think of filing." Section 6A-9-309 at cmt. 4. It shields "the assignee who has no reason to believe that the assignment when made could result in the transfer to him of a significant part of the assignor's receivables." E. TurgeonConst. Co., 110 R.I. at 309-310, 292 A.2d at 234. Therefore, §6A-9-309(2) does not apply to the assignee who regularly participates in the business of financing. Id. "Any person who regularly takes assignments of any debtor's accounts or payment intangibles should file." Section 6A-9-309 at cmt. 4.
The party claiming the application of § 6A-9-309(2) bears the burden of proving the same. In re Tri-County Materials, Inc.,114 B.R. 160, 164 (C.D. Ill. 1990); In re Drapery Design Ctr.,Inc., 86 B.R. 120, 124 (N.D. Ohio 1988); Miller v. Wells FargoBank Int'l Corp., 406 F. Supp. 452, 477 (S.D.N.Y. 1975). Courts utilize two different tests to ascertain whether § 6A-9-309(2) applies to a given set of facts. Consolidated Film Indus. v.United States, 403 F. Supp. 1279, 1283 (D. Utah 1975). Some courts consider "the casual or isolated nature of the assignment as the critical issue," while others examine "whether the assignment resulted in the transfer of a significant part of outstanding contract rights of the assignor." Id. In finding that § 6A-9-309(2) applied to a given situation, the Rhode Island Supreme Court utilized both tests. E. Turgeon Const. Co., 110 R.I. at 310, 292 A.2d at 234-35. Accordingly, it noted that the assignee was "not in the business of obtaining assignments," the assignment was an isolated event, and the amount available to the assignee did not constitute a significant part of the assignor's receivables. Id.
This Court finds that US Filter failed to meet its burden of proving the applicability of § 6A-9-309(2). In a footnote, US Filter baldly asserts that "[t]he Joint Check Agreement . . . constitutes the assignment of an account which does not by itself or in conjunction with other assignments to US Filter transfer a significant part of . . . Defendant's accounts." Petition at 2, n. 1. US Filter provides no facts in support of this contention. Furthermore, US Filter supplies no information as to whether the assignment constitutes a casual or isolated event. Accordingly, this Court finds that § 6A-9-309(2) is inapplicable. US Filter, therefore, is an unsecured claimant.
IV. Inequitable or Unjust Enrichment
US Filter further argues that receipt by the receiver, a creditor, or any other party of the benefit of the Receivable prior to full satisfaction of US Filter's claim would constitute inequitable and unjust enrichment because (1) by performing its obligations under its agreement with Defendant, US Filter conferred a benefit upon Defendant and other creditors; (2) US Filter reasonably and justifiably relied to its detriment on Defendant and Marshall's assurances; and (3) US Filter's performance enabled Defendant, Marshall, and others to perform their respective obligations on the Project. Petition at 2-3. Plaintiff, however, avers that US Filter is not entitled to relief pursuant to the doctrine of unjust enrichment because it offers no legal basis for the doctrine's application to these circumstances and cannot establish the requisite elements for recovery. Pl.'s Mem. in Supp. of Objection to US Filter's Pet.
at 3-4.
"The doctrine of unjust enrichment is equitable in . . . nature." Rhode Island Hosp. Trust Co. v. Rhode Island CoveringCo., 96 R.I. 178, 179-80, 190 A.2d 219, 220-21 (1963). In general, courts apply the doctrine "to permit a recovery where one person has received a benefit from another and the retention thereof would be unjust under some legal principle recognized in equity." Id. at 180, 190 A.2d at 221. Claims based upon theories of unjust enrichment and quasi-contract are, in essence, identical. R B Elec. Co. v. Amco Constr. Co., 471 A.2d 1351, 1355 (R.I. 1984). To recover under quasi-contract for unjust enrichment, a claimant must establish the following three elements: (1) a benefit conferred upon the defendant by the claimant; (2) "an appreciation by the defendant of such benefit"; and (3) "an acceptance of such benefit under such circumstances that it would be inequitable for . . . [the defendant] to retain the benefit without paying the value thereof." Id. at 1355-56. Of these three elements, "[t]he most significant . . . is that the enrichment to the defendant be unjust." Id. at 1356.
For two reasons, this Court finds that US Filter is not entitled to relief pursuant to the doctrine of unjust enrichment. First, it is not clear that US Filter conferred a benefit upon Defendant as opposed to Marshall. Second, even if US Filter conferred a benefit upon Defendant, acceptance of such a benefit does not occur in circumstances under which it would be inequitable for Defendant to retain the benefit without paying the value thereof. Rather, this case occurs in the context of a receivership proceeding, and inequity would result if this Court allowed US Filter, an unsecured creditor, to step ahead of other creditors, whether secured or not. Accordingly, this Court denies US Filter relief pursuant to the theory of unjust enrichment.
V. Constructive Trust
US Filter also urges this Court to impose a constructive trust upon the Receivable. Petition at 3. Plaintiff, nevertheless, alleges that imposition of a constructive trust is inappropriate as a matter of law as well as policy. Pl.'s Mem. in Supp. ofObjection to US Filter's Pet. at 5.
Equity utilizes the constructive trust to accomplish justice.Simpson v. Dailey, 496 A.2d 126, 128 (R.I. 1985). The constructive trust seeks to prevent "unjust enrichment of one party at the expense of another in situations in which legal title to property was obtained (1) by fraud, (2) in violation of a fiduciary or confidential relationship, or (3) by testamentary devise or intestate succession in exchange for a promise to hold in trust." Id.
US Filter does not allege, nor does this Court find, that Defendant obtained legal title to the Receivable by fraud, in violation of a fiduciary or confidential relationship, or by testamentary devise or intestate succession in exchange for a promise to hold in trust. Having found that none of the requisite circumstances exist, this Court declines to grant US Filter relief in the form of a constructive trust.
VI. Equitable Tracing Principles
Finally, US Filter asserts that it can trace its ownership interest in the proceeds by means of equitable tracing principles, including the lowest intermediate balance rule.Petition at 3. Having found that US Filter is not entitled to a first priority secured claim on the basis of the Joint Check Agreement, relief pursuant to an unjust enrichment theory, or the imposition of a constructive trust, this Court need not address the use of equitable tracing principles.
 CONCLUSION
This Court finds that US Filter has not met its burden of proving that either § 6A-9-109(d)(6) or § 6A-9-309(2) applies to the case at bar. Furthermore, this Court denies US Filter relief pursuant to an unjust enrichment or constructive trust theory. Accordingly, this Court disallows the Petition and concludes that Granite Properties' security interest takes priority over US Filter's claim. Defendant's counsel shall present an appropriate order for entry.
[1] The real party in interest in this proceeding is Granite Properties, the assignee of Fleet National Bank's secured position.
[2] This Court notes that the utilization of joint check agreements is not uncommon in the construction industry. As one authority notes,
 "Payment for services rendered in the construction industry is frequently made by a check payable jointly to the subcontractor who performed such services and his materialman. Each payee must endorse the check before it may be cashed. Since the check pays for both labor and materials, it is the usual practice that the subcontractor take part of the proceeds and that the materialman retain the balance." Rodney Moss, "Joint Checks: Practices in the Construction Industry," Journal of the State Bar of California, p. 242 (1968).
[3] Though it does not specifically so state, WinklerConstruction Co. seems to concern an equitable assignment. SeeIn re Gibraltar Resources, 211 B.R. at 224 (noting that "by discussing the issue of control, the court [in WinklerConstruction Co.] seems to imply that the assignment in question . . . was an equitable one").