**WINKLER CONSTRUCTION CO., Appellant,**

v.

**HORNOR & COMPANY, Appellee.**

No. 16043.

Court of Civil Appeals of Texas, San Antonio.

Jan. 31, 1979.

Rehearing Denied April 25, 1979.

Daniel R. Rutherford, San Antonio, for appellant.

Banks M. Smith, Banks & Banks, San Antonio, for appellee.

OPINION

CADENA, Chief Justice.

Winkler Construction Company, which will be identified in this opinion as "defendant," appeals from a judgment awarding plaintiff, Hornor & Company, a recovery of $1,292.75 against defendant on the theory that Climate Control Company, which had a claim against defendant in that amount, had assigned its claim to plaintiff. The judgment was based on jury findings to the effect that Climate Control had assigned its claim against defendant to plaintiff and that defendant had notice of such assignment before it paid its debt to Climate Control.

Defendant undertook, as general contractor, to construct drive-in teller windows for a San Antonio bank. Climate Control, as subcontractor, contracted to install the required air conditioning equipment. It is undisputed that at the completion of the air conditioning work defendant still owed Climate Control $1,292.75.

Plaintiff is engaged in the business of supplying equipment and materials to contractors and had supplied such equipment to Climate Control over a period of time. In October, 1975, Climate Control attempted to secure additional equipment from plaintiff. Since plaintiff had experienced difficulty in collecting from Climate Control in the past, and since plaintiff had reason to believe that Climate Control was experiencing financial difficulties, it expressed its reluctance to extend further credit to Climate Control. It was finally agreed that plaintiff would deliver the equipment desired by Climate Control if the latter would assign to plaintiff the amount defendant owed to Climate Control.

Sharon Lempar, plaintiff's bookkeeper and office manager, testified that on Octo-

ber 13, 1975, she called Rudolph Winkler, defendant's president, to ascertain the amount still due to Climate Control, and that Winkler verified that the amount was $1,292.75. During the course of this conversation Winkler agreed to "consign" the amount owed to Climate Control "on a joint payment between [plaintiff] and Climate Control Company." She then told Winkler that she would send him "a letter accordingly." Winkler testified that he had no recollection of this conversation and that, to the best of his recollection, it had not taken place.

On October 14, 1975, the president of Climate Control took a letter to defendant's office. In this letter, Climate Control, after stating that it had one "draw" remaining on the bank job in the amount of $1,292.75, requested that the "check for that draw be made payable jointly to Climate Control Co. and [plaintiff], so that [plaintiff] will be assured of payment for materials released." This letter, which was addressed to Rudolph Winkler, also contained Climate Control's request that Mr. Winkler sign the letter to indicate his acceptance. At the bottom of the letter there is a signature line, with the words, "Accepted" and "Rudolph Winkler, President Winkler Construction Co." Mr. Winkler did not sign the letter. Instead, following the word "Accepted," there appears the signature of Steven R. Oberg, and under this signature there appear the words, "Office Manager."

When plaintiff received this letter, signed by Oberg, it delivered the equipment and materials to Climate Control. The uncontradicted evidence establishes that such delivery would not have been made in the absence of receipt by plaintiff of such letter. Winkler testified that he did not see the letter prior to November 13, 1975, the date on which defendant issued its check in the amount of $1,292.75 payable to Climate Control alone, rather than jointly to Climate Control and plaintiff. Plaintiff has received no money from either Climate Control or defendant.

Defendant's answer contains no sworn denial that Oberg had no authority to sign the instrument on behalf of defendant and on which plaintiff's claim is based. *See* Tex.R.Civ.P. 93(h). In any event, Winkler testified that he had delegated authority to Oberg and that Oberg's acts were regarded as the corporation's acts.

We do not consider defendant's complaint that the trial court erred in overruling its objections to the charge. Defendant does not specify the portion of the record in which such objections appear, and the transcript does not reflect that defendant filed objections to the charge. Tex.R.Civ.P. 272.

Defendant urges that the judgment is erroneous because there is no evidence of an effective assignment by Climate Control to plaintiff of Climate Control's claim against defendant. Defendant insists that Climate Control's request that defendant pay the amount due to Climate Control by making the check payable to Climate Control and plaintiff jointly cannot constitute an assignment of Climate Control's rights to plaintiff. This argument is based on the often-repeated proposition that there can be no valid assignment unless there is

> an appropriation of the fund pro tanto either by an order on the specific fund or by transferring the amount otherwise in such a manner that the holder of the fund is authorized to pay the amount directly to the creditor, without the further intervention of the debtor, [so that there is a] . . . surrender [of] control over the funds or property assigned.

*See Cooper v. Cocke,* 145 S.W.2d 275, 279 (Tex.Civ.App.—Amarillo 1940, no writ). Defendant's theory is that since Climate Control requested defendant to pay by means of a check payable to it and plaintiff jointly, Climate Control had not surrendered control of the fund, since the negotiation of the check would require the endorsement of Climate Control.

Our attention has been called to no Texas case, and we have found none, in which the court directed its attention to the problem now before us. There are decisions upholding assignments where the debtor's payment of the debt owed the assignor was to be made by check payable to both assignor

and assignee. *See Manes Construction Co. v. Wallboard Coatings Co.,* 497 S.W.2d 334, 336 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ); *Olshan Lumber Co. v. Bullard,* 395 S.W.2d 670 (Tex.Civ.App.—Houston [1st Dist.] 1965, no writ). But, as plaintiff admits, the question of the effect of payment by a joint check was not discussed in such cases.

We have found only one case in which the problem was discussed. In *McClary v. Midland Land & Development Co.,* 109 F.Supp. 847, 852–53 (E.D.Tenn.1952), the court said that there had been no assignment, "valid as to parties not connected with the transaction," because of the assignor's failure to relinquish complete control of the account. Although the court did not specifically refer to the fact that the debtor was to make payment by check payable jointly to the assignor and assignee as the basis for concluding that complete control had not been relinquished, a reading of the opinion justifies the conclusion that this was the decisive factor. However, the court pointed out that the parties to the transaction (debtor, assignor and assignee) "treated [the agreement] as an assignment or, possibly in a more accurate sense, as a working contract in the nature of an assignment," and rendered judgment in favor of the assignee against the debtor. *Id.* at 853.

In *Wolters Village Management Co. v. Merchants and Planters National Bank of Sherman,* 223 F.2d 793 (5th Cir. 1955), the Court, after describing the case as one involving the effectiveness of a security arrangement in which a prime contractor promised a subcontractor to render payment by checks made out jointly to the subcontractor and his prospective creditor, held that a certain letter agreement could not be considered an assignment under Texas law because there was no manifestation by the subcontractor of his intention to transfer, without further action, his right to the creditor. *Id.* at 798. However, it is clear that this holding was based on the fact that the letter in question from the subcontractor to the prime contractor merely stated that the subcontractor wished to assign his rights to his creditor. The Court said that the expression of a "wish to extend an assignment" was not equivalent to "we have assigned" or "we hereby assign," and that the language used clearly showed that some further act by the subcontractor was contemplated in order to complete the transfer of the right. *Id.* That the Court did not consider payment by means of a joint check to be an obstacle to the finding of an assignment is made clear by the fact that the Court found the assignment completed when the subcontractor and the creditor completed arrangements for the extension of credit by the creditor to the subcontractor.

█ In the case before us, the agreement between plaintiff and Climate Control was complete prior to the time that Climate Control caused the letter to be taken to defendant's office and signed. There can be no question that all details of the arrangement were completed at the time that the letter was delivered to plaintiff. Nothing further remained to be done in order to vest in plaintiff the right to the money in question. It is true that it would have been necessary, had defendant issued a check payable to Climate Control and plaintiff jointly, for Climate Control to endorse the check in order to enable plaintiff to receive the money; however, Climate Control had clearly become obligated to furnish such endorsement as the result of its agreement with plaintiff and had no right to withhold such endorsement. Because of its agreement with plaintiff, Climate Control lost the right to exercise a directing or governing influence over the money. The absence of a right to direct or manage amounts to an absence of the right to control.

█ We conclude that the evidence establishes an assignment from Climate Control to plaintiff.

Defendant's contentions that there was no evidence or, in the alternative, insufficient evidence, to support the jury finding that it had notice of the assignment are, in the light of the evidence summarized above, without merit.

Defendant asserts that the trial court erred in submitting Special Issue 2, which inquired whether defendant had notice of the assignment because the issue, as submitted, constituted an inquiry as to a question of law, rather than a question of fact. In this connection, defendant argues that the controlling question was whether it had failed to exercise due diligence after receiving notice of the assignment. As already pointed out, defendant filed no timely objections to the charge. The question of the propriety of the submitted form of the issue is, therefore, not before us. We are not passing on defendant's contention that an obligor who, with notice of an assignment, pays the obligation to the assignor is not liable to the assignee unless such obligor was guilty of negligence. *Cf. Olshan Lumber Co. v. Bullard,* 395 S.W.2d 670, 672 (Tex.Civ.App.—Houston [1st Dist.] 1965, no writ).

The judgment of the trial court is affirmed.