ROBERT PARKER'S TRUCK AND TRAILER REPAIR, INC., D/B/A Victoria Mack Sales and Services, Appellant,

v.

Ben P. SPEER, Appellee.

No. 01-86-0142-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 11, 1986.

Stan Nix, Stan Nix & Associates, Houston, for appellant.

Eugene J. Pitman, De Lange, Hudspeth, Pitman & Katz, Houston, for appellee.

Before DUGGAN, HOYT and LEVY, JJ.

## OPINION

LEVY, Justice.

Appeal is taken in an assignment of account case where, in a bench trial, the court entered judgment against appellant, the account debtor, for $86,603.35 plus $3,500 in attorney's fees, plus interest and costs, and in favor of appellee, the assignee of the account.

The appellant is in the business of selling and repairing trucks. In December of 1980, appellant sold 12 trucks to El Tex Drilling Company that were to be equipped

with rigging before delivery. Ted Pennington, sales manager for appellant, arranged for the rigging work to be performed by K & K Truck Rigging Service, Inc. ("K & K"), for $367,252.

Pennington was then informed by John L. Kissinger, Jr., an agent and president of K & K, that K & K needed to obtain interim financing from either Allied Bank or appellee before work could begin. Kissinger then requested that Pennington provide K & K with an invoice and a letter to appellee stating that appellant would make payments with checks designating both K & K and appellee as joint payees. Pennington complied with the request and transmitted the letter and invoice.

The letter was dated December 16, 1980, signed by Pennington without designation of his position with appellant, and delivered to appellee by Kissinger. Appellee Speer then delivered a check in the amount of $100,000 to K & K on December 17, 1980, in return for a promissory note executed by Kissinger in the amount of $104,200. Eventually, work on several of the trucks was completed, and appellant delivered two other checks totaling $138,593 to K & K dated February 6, 1981, for work completed on the El Tex trucks as well as on those of other customers. Appellee was not designated as a payee on either check. Neither K & K nor Kissinger paid appellee any amount in satisfaction of the note. Appellant was then contacted by appellee's attorney and, on April 9, 1981, paid $17,596.65 to appellee, the amount remaining unpaid for the work performed by K & K.

Appellee thereafter sued appellant, Pennington, and Kissinger to recover upon its agreement with appellant to assign to appellee the account payable owing by appellant to K & K, and the action against Kissinger being based upon the promissory note in the amount of $104,200. Kissinger individually was non-suited after being discharged in bankruptcy.

Essentially, the trial court determined in its findings of fact that appellee loaned Kissinger $100,000 and took his promissory note in the amount of $104,200, which included agreed interest; that K & K, the holder of a purchase order from appellant, assigned the account receivable evidenced thereby to appellee to secure such indebtedness; that appellant had notice of that assignment before making any payment thereunder; that Pennington had authority to order the services listed on the purchase order and to disburse payment therefor; and that appellant became indebted to K & K, pursuant to the purchase order, for sums in excess of $104,200, but made payment of such amounts solely to K & K before April 9, 1981, when appellant paid the sum of $17,596.65 to appellee. The court also found that appellee made timely demand for payment and that attorney's fees of $3,500 were reasonable for the services rendered to appellee in this cause.

As its conclusions of law, the court determined that appellant had actual timely knowledge of the assignment of such account payable and was indebted to appellee for the balance owing and for attorney's fees and costs.

■ Appellant states in points of error one and two that there is no evidence or "insufficient evidence as a matter of law" to support the finding that appellant had notice of the assignment of the account to appellee. The appropriate inquiry, under these points, is whether the record contains evidence of probative value to support the finding. *Woodward v. Ortiz,* 150 Tex. 75, 237 S.W.2d 286 (1951). Our review is limited to considering only the evidence and inferences tending to support the finding and disregarding all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). If the record contains any evidence, whether direct or circumstantial, amounting to more than a mere scintilla, appellant's points must be overruled. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898). Assignment of accounts is governed by the following provision:

The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and

that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor.

Tex.Bus. & Com.Code Ann. sec. 9.318(c) (Tex.UCC) (Vernon Supp.1986). No particular method or form of notification is stated.

■ Appellee contends that the evidence is sufficient to support a finding that the appellant had actual notice of the assignment. "Actual notice" embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand *would have* disclosed. *Woodward*, 237 S.W.2d 286.

■ Pennington testified that Kissinger told him that K & K had to obtain financing to be able to begin the job and that Allied Bank and appellee Speer were potential financiers. Pennington also admitted that he signed a letter to appellee typed by the sales secretary, Clara Olson, acknowledging that payment would be made by checks bearing the names of K & K and appellee as joint payees. Clara Olson, at Pennington's request, initiated an inquiry in which she spoke with Kissinger, visited Allied Bank, and determined erroneously that only K & K's name was to be designated on the checks as payee. Clearly, appellant's agents possessed enough information to cause them to make a reasonable inquiry into the existence of an assignment.

■ However, appellant made no attempt to contact the only other potential financier, Speer, the appellee. Pennington testified that he did not attempt to contact Speer. He never did ask Kissinger for appellee's address or phone number to confirm who was to be named as payee on the checks. If an obligor has such knowledge of facts as is sufficient to put him on inquiry about an assignment, he is not entitled to rely only on statements made to him by the assignor after receiving such information. *See Winkler Construction Co. v. Hornor & Co.*, 580 S.W.2d 401 (Tex.Civ. App.—San Antonio 1979, writ ref'd n.r.e.); *see also Olshan Lumber Co. v. Bullard*, 395 S.W.2d 670 (Tex.Civ.App.—Houston [1st Dist.] 1965, no writ). We conclude that a reasonably diligent inquiry would have fairly included an attempt to contact appellee, and that the evidence is sufficient to support the trial court's finding that appellant had "actual notice" of the assignment.

Appellant's first two points of error are overruled.

■ Appellant states in its third point of error that there is no evidence or "insufficient evidence as a matter of law" to support the finding that Pennington had actual authority to execute the letter delivered to appellee. The scope of an agent's authority is a question of fact that may be proved with circumstantial evidence. *Grundmeyer v. McFadin*, 537 S.W.2d 764 (Tex.Civ. App.—Tyler 1976, writ ref'd n.r.e.).

■ The record shows that Pennington was given broad authority by appellant. Pennington's contract of employment with appellant gave him extensive discretion in conducting all aspects of sales. Pennington testified that he was both appellant's sales manager and its sole salesman, and that he was the only agent of appellant who dealt with K & K when the purchase order agreement for $327,000 was made. The testimony also reflects that Pennington had general authority to request, sign, and deliver checks. Clara Olson testified that if a name that was supposed to be listed on a check was not contained in the corresponding purchase order, she would refer the matter to Pennington, her supervisor. This evidence, considered in its entirety, is sufficient to support the finding that Pennington had actual, and not merely apparent, authority to execute the letter.

Appellant's third point of error is overruled.

■ Appellant states in its fourth point of error that there is no evidence or "insuf-

ficient evidence as a matter of law" to support the finding that appellee incurred $3,500 in reasonable and necessary attorney's fees. Appellant cites no authority and employs scant argument in support of his contention. Appellee's attorney testified, without dispute or objection, that appellee had incurred $4,235 in reasonable attorney's fees. This testimony is sufficient to support the court's finding. Appellant's fourth point of error is overruled.

The judgment is affirmed.