In re GIBRALTAR RESOURCES, INC. d/b/a Resources International Group, Gibralter–AEI, Inc., Atlantis Energy, Inc., Atlantis Horizontal, Inc., Gibraltar Resources Corporation, Jones #1 Joint Venture, Ploeger #1 Joint Venture, McVea–Wilson #1 Joint Venture, Ploeger–Hamon #1 Joint Venture, Gibraltar–Hannusch #1 Joint Venture, Cantley #1 Joint Venture, Carnes #1 Joint Venture, Debtor.

Carey D. EBERT, Trustee, Plaintiff,

v.

BLACK MAX DOWNHOLE TOOLS, INC., Defendant.

Bankruptcy No. 393–37028–RCM–7.
Adversary No. 396–3066.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 10, 1997.

Gibraltar Resources, Inc., Dallas, TX, pro se.

Carey Ebert, Hurst, TX, trustee.

Stacey C. Jernigan, Haynes & Boone, Dallas, TX, for Blackmax Downhole Tools, Inc.

## *AMENDED MEMORANDUM OPINION*

ROBERT C. McGUIRE, Chief Judge.

This matter comes before the Court on a motion for rehearing of the Court's previous ruling denying Black Max Downhole Tools, Inc.'s ("Black Max" or "Movant" or "Defendant") motion for summary judgment on the Trustee's complaint to recover a preference. The Court concludes for the reasons below that the motion for rehearing should be granted, and that, Black Max's motion for summary judgment should be granted as well. This Amended Memorandum Opinion replaces the Memorandum Opinion previously entered on April 23, 1997. Following are the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## Background

The facts are not in dispute. The controversy in this matter centers around insurance proceeds that insurance underwriters at Lloyd's, London and London Companies ("Lloyd's") were to pay to the Debtor after it experienced a loss at one of its wells. Before paying the claim, Lloyd's was notified that various creditors of the Debtor claimed an interest in the proceeds, and these creditors demanded to be paid directly by Lloyd's. Lloyd's filed an interpleader action in the United States District Court for the Southern District of Texas and paid the insurance proceeds into the registry of the court.

For unknown reasons, Black Max was not a named party in the interpleader action. In fact, Black Max intervened, *see* Defendant's Exhibit ("Dx.") 12 & 13, in the interpleader action only after inadvertently learning of it nearly a month later. At the time Black Max intervened, *see* Dx. 13 (court order permitting intervention signed June 25, 1993), an Agreed Final Judgment ("Agreed Judgment"), Dx. 17, was close to being finalized between the other parties, and in order to preserve the tranquility of advanced settlement negotiations, Black Max did not press to be included in the Agreed Judgment which was entered on July 9, 1993. Richardson Affidavit at 6–7. Rather, Black Max entered into a Settlement Agreement, Dx. 14, with Atlantis Horizontal, Inc. and Resources International Group (alleged d/b/a's of Debtor, hereinafter sometimes collectively referred to as Debtor or Atlantis and R.I.G.) on July 2, 1993 whereby these parties agreed to pay Black Max a portion of the proceeds they were to receive under the Agreed Judgment. A letter dated July 2, 1993 was signed by Black Max and the ·Debtor and was sent to counsel for Lloyd's, Bell & Murphy. ("Letter"), Dx. 15. Bell & Murphy specifically signed and "agreed to and accepted" the terms of such Letter. The Letter instructed Bell & Murphy what to do with the funds it would receive from the district court under the Agreed Judgment.

Such Letter provided in part:

This letter will serve as your written instructions with respect to certain funds to be received by Atlantis Horizontal Services, Inc. ("Atlantis") and Resources International Group, Inc. ("RIG") under a certain Agreed Final Judgment to be filed in the above-referenced Interpleader Action. You are instructed to hold the checks received by your firm with respect to the above-referenced Intervention, and notify the appropriate party for Atlantis and RIG who will properly endorse their checks payable to the order of Bell & Murphy. You are instructed to deposit such endorsed checks in your law firms trust account and immediately reissue a check payable to the order of Black Max Downhole Tools Incorporated in the amount of $130,000.00. You are instructed not to release any checks received with respect to the above-referenced Intervention until such time as Atlantis and RIG checks have been deposited and a check has been prepared and delivered to Black Max.

The above payments are made pursuant to a certain Settlement Agreement attached hereto for your convenient reference.

Under paragraph three of the Agreed Judgment, Bell & Murphy was to receive from the registrar of the court all the checks issued and was to distribute same to the interpleader defendants, which included Debtor. Dx. 18. Also, in connection with the Settlement Agreement, Black Max filed a Stipulation by Intervenor Black Max Downhole Tools Inc. ("Stipulation"), Dx. 16, in the interpleader action on July 7, 1993 that disclosed the terms of the Settlement Agreement and the mechanics of how Black Max would be paid. It was signed only by Black Max.

The Agreed Judgment was entered on July 9, 1993, Dx. 20, and the preference period commenced on July 14, 1993. Thereafter, all insurance proceeds were distributed to the various creditors according to the Agreed Judgment. According to the terms of the Settlement Agreement, Letter, and Stipulation, Debtor's funds received by Bell & Murphy from the registry of the court were deposited in Bell & Murphy's trust account and such firm wrote a check to Black Max for $130,000. In her brief, the Trustee states: "The funds were received by Bell &

Murphy from the Debtor by Debtor's indorsement to Bell & Murphy of a $147,258.57 United States Treasury check issued [by the court registrar] to the debtor on July 21, 1993 pursuant to an agreed judgment in the interpleader action." Trustee's Response to Defendant's First Motion for Summary Judgment ("Trustee's Response") at 2 & 3; *see also* Dx. 19 (Bell & Murphy's check to Black Max for $130,000.00 dated July 23, 1993). In this manner, Black Max received its payment from Debtor.

Thereafter, on October 12, 1993, an involuntary petition was filed against the Debtor. Later, the Trustee of the Debtor sought to avoid and recover the various payments made to all the creditors under the Agreed Judgment as preferences. Two of the creditors who received payment under the Agreed Judgment, Dailey Directional Services and Varel Manufacturing Co., sought and were granted summary judgment that the transfer of funds according to the Agreed Judgment took place outside the preference period, i.e. on the date of the Agreed Judgment, July 9, 1993, not on the date the funds were actually transferred, July 21, 1993. Thus, the funds were not avoidable as preferences. *Ebert, Trustee for Gibraltar Resources, Inc. v. Blackmax Downhole Tools, Inc.*, 197 B.R. 246 (Bankr.N.D.Tex.1996), *aff'd sub nom Ebert v. Dailey Directional Services*, 202 B.R. 586 (N.D.Tex.1996).[1] After these adverse rulings, the Trustee dismissed the preference actions with respect to all the remaining creditors except Black Max.

By the Memorandum Opinion and Order entered April 23, 1997, this Court denied Black Max's motion for summary judgment. In its Memorandum Opinion the Court held that there was no express assignment outside the preference period of the insurance funds sought to be recovered by the Trustee as a preference. The Court also held that there was no equitable assignment of these funds outside the preference period because the second element of an equitable assignment, a total relinquishment of control, was not met.

Upon reconsideration, the Court finds that the Debtor had relinquished control over the funds at issue before the preference period commenced, thus satisfying the second element of an equitable assignment, and therefore, establishing an equitable assignment of these funds outside the preference period. Since the summary judgment evidence establishes that the funds were assigned prior to the start of the preference period, summary judgment is appropriate for Black Max on the Trustee's preference action.

### *Issue*

Both parties agree that the sole issue on Black Max's motion for summary judgment arising from these facts is whether the funds at issue were assigned to Black Max outside the 90–day preference period by express assignment or equitable assignment. None of the parties disputes that there was an assignment. The only dispute is when the assignment became effective. Black Max contends that it is no differently situated than the other creditors who were paid under the Agreed Judgment and whose preference actions were dismissed by the trustee or granted summary judgment. Black Max asserts that the Settlement Agreement, Letter, and Stipulation made the assignment effective outside the preference period, i.e. before July 14, 1993.

The Trustee, however, contends that the language of the Settlement Agreement is merely a contract for future performance and does not therefore effect an assignment. The Trustee also argues that the Stipulation is simply a recital of the terms of the Settlement Agreement, and the Letter is merely a list of instructions to Bell & Murphy. Thus, the Trustee claims, the assignment of the funds was not effective until Debtor endorsed and delivered the check to Black Max, which occurred inside the preference period, i.e. after July 14, 1993. More specifically then, the issue is whether when construed together the Settlement Agreement, Letter, Agreed Judgment, and Stipulation constitute an express or equitable assignment of the funds at

---

1. The prior opinions discuss the amendment of the interpleader judgment to make a $390.45 adjustment in interpled funds going to one of the named defendants. Such amendment to the judgment is irrelevant to the present dispute for the reasons stated in this Court's prior opinion.

issue to Black Max prior to the commencement of the preference period. In its motion for reconsideration, Black Max only concentrates on the equitable assignment aspect of the controversy although mentioning its constructive trust contention. Motion for Reconsideration of Memorandum and Order Dated April 23, 1997 Denying Motion for Summary Judgment ("Motion for Reconsideration") at 11 n. 4.

### Analysis

Summary judgment is appropriate when the movant can demonstrate to the Court that there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir.1988). The Court must draw all inferences from the underlying facts in a light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The initial burden of proof that there are no genuine issues of material fact is on the movant, but once the movant has met its initial burden, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).

### Express Assignment

Black Max argues that as a matter of law there was no "transfer of an interest of the debtor in property on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b) & (4)(A). For Movant to be successful on its Motion, it must be found that the Settlement Agreement, Letter, Stipulation, and Agreed Judgment construed together constituted an assignment that transferred Debtor's interest in the insurance proceeds to Black Max before the preference period commenced.

 It is clear that insurance policy proceeds validly assigned elsewhere by a debtor are not property of the debtor's bankruptcy estate. *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition Inc.)*, 832 F.2d 1391, 1401 (5th Cir.1987); *In re Moskowitz*, 14 B.R. 677, 680–81 (Bankr.S.D.N.Y.1981). Further, if a valid assignment of insurance policy proceeds occurs prior to the beginning of the preference period, then such an assignment will not be considered a preference. *Ebert, Trustee for Gibraltar Resources, Inc. v. Blackmax Downhole Tools, Inc.*, 197 B.R. 246 (Bankr. N.D.Tex.1996), *aff'd sub nom. Ebert v. Dailey Directional Services*, 202 B.R. 586 (N.D.Tex.1996); *Moskowitz*, 14 B.R. at 682. A valid assignment[2] requires "a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or a third person." *Wolters Village Management Co. v. Merchants and Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir.1955); *In re Ashford*, 73 B.R. 37, 39 (Bankr. N.D.Tex.1987); *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 113 (Tex. App—Houston [14th Dist.] 1996, no writ); *Pape Equip. Co. v. I.C.S. Inc.*, 737 S.W.2d 397, 399 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). A transaction that requires a further act to complete a transfer will not effect an assignment.[3] *Ashford*, 73 B.R. at 40 (citing *Wolters*, 223 F.2d at 798). Intent is an essential element. *Id.* at 39.

 There is a distinction, however, between intending to pay out of a particular fund and intending a present transfer of an

---

2. "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance." Restatement (Second) of Contracts § 317(1) (1981).

3. "It is essential to an assignment of a right that the obligee manifest an intention to transfer the right to another person *without further action* or manifestation of intention *by the obligee*. The manifestation may be made to the other or to a third person on his behalf and, except as provided by statute or by contract, *may be made either orally or by a writing*." Restatement (Second) of Contracts § 324 (1981) (emphasis added).

interest in that fund. *Stowell v. Macandrews & Forbes*, 956 F.2d 96, 99 (5th Cir. 1992). "Furthermore, in order to effectuate a valid transfer of an interest in a particular fund, 'the transfer must be such as to leave the assignor with no control over the fund.'" *Id.* (quoting *Ashford*, 73 B.R. at 40). Intending to pay out of a particular fund without a manifestation of intention to make a present transfer merely grants a contractual right;[4] whereas, intending a present transfer of an interest in a fund grants a property right. *See id.* Thus, for an assignment to be found, it must be clear that the assignor intends to give and the assignee intends to receive present ownership of the fund. *Id.*

Several cases have addressed the issue of whether a particular transaction constituted an assignment. In *Wolters Village Management Co. v. Merchants and Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir.1955), the Fifth Circuit held that a letter agreement purporting to assign to a bank monies due under a construction subcontract was not an assignment of those monies. The letter agreement stated in pertinent part: "We wish to extend an assignment of all monies [from the subcontract] to [the bank]." The court held that such language "clearly contemplates some further act to complete the transfer of the right.... Consequently, the assignment was not made by means of this letter, but was completed later...." *Id.* The court found significant the fact that the letter did not use language of a present assignment, e.g. "we have assigned" or "we hereby assign," but rather used the language "we wish to extend an assignment." Such language was not sufficient to effect an assignment.

In *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 401 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), the court held that an agreement purporting to assign to I.C.S., Inc. a cause of action was not an assignment. The court held that "[t]he

agreement is void of any words of transfer so essential to an assignment." *Id.* The court also found significant the fact that the purported assignor retained some control over the cause of action which I.C.S., Inc. alleged it was assigned. Such retention of control was "contrary to any suggestion of an assignment." *Id.*

In the case before this Court, the Settlement Agreement, Letter, and Stipulation do not contain language of express assignment. *See Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569, 573 (5th Cir.1992); *Moskowitz*, 14 B.R. at 681. Rather, such instruments use language such as "will be paid," "will receive," and "will be delivered." Dx. 16 at 2 (Stipulation). In light of the authorities discussed above, the language of the Settlement Agreement, Letter, and Stipulation are not adequate to effect an express assignment. *See also Shiro v. Drew*, 174 F.Supp. 495, 498–99 (D.Me. 1959); *Lease–A–Fleet, Inc. v. Morse Operations, Inc. (In re Lease–A–Fleet, Inc.)*, 141 B.R. 853, 861–62 (Bankr.E.D.Pa.1992); *Service Adjustment Co. v. Underwriters at Lloyd's London*, 205 Ill.App.3d 329, 150 Ill. Dec. 243, 245–46, 562 N.E.2d 1046, 1048–49 (1990).

### Equitable Assignment

In certain instances, Texas courts will imply an equitable assignment when no express assignment can be established. *See Pape*, 737 S.W.2d at 402. "[A] court of equity constructs the assignment out of the agreement and situation of the parties as shown by either direct or circumstantial evidence." *Banco Longoria, S.A. v. El Paso Nat'l Bank*, 415 S.W.2d 1, 5 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.) (citing *Sorenson v. Dawdy*, 196 S.W.2d 687, 690 (Tex.Civ. App.—Fort Worth 1946, no writ)). For a court to find an equitable assignment, "the agreement must evidence an intent to transfer the interest and the transferor must re-

---

4. "A contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment." Restatement (Second) of Contracts § 330(1) (1981). "As to a right in existence, it is a question of interpretation whether the obligee manifests an intention to make a *present transfer*

or only an intention to bind himself to make a future transfer. A present assignment may be coupled with a promise to provide future evidence of the transfer, but *there is no assignment if the transfer is not to take place until the obligee acts further.*" *Id.* cmt. a (emphasis added).

linquish control over the interest." *Pape,* 737 S.W.2d at 402. "No particular words or kind of instrument are necessary to effect an equitable assignment," but "there must be sufficient evidence of an intent to assign." *Ashford,* 73 B.R. at 39. "The transfer must be such as to leave the assignor with no control over the fund." *Stowell,* 956 F.2d at 99 (quoting *Ashford,* 73 B.R. at 40).

▪ Thus, the two central factors to establish an equitable assignment are an intent to assign and a total relinquishment of control. Although the language of the Settlement Agreement, Letter, and Stipulation were not sufficient to establish an intent to effect an express assignment, such language in light of the surrounding circumstances and documentation is sufficient to establish an intent to effect an equitable assignment before the commencement of the preference period, especially since no particular words are necessary. The language of the Settlement Agreement, Letter, and Stipulation demonstrated an intent to transfer the funds to Black Max to satisfy Black Max's claims against the Debtor, and that is what actually happened.

▪ It is a closer question to decide if Debtor relinquished its control over the funds prior to the start of the preference period as a result of the agreements and situation of the parties. A few courts have discussed the control element of an equitable assignment: "The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do[es], it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor." *Koenig v. Rio Bravo Oil Co.,* 24 S.W.2d 14, 16 (Tex. Comm'n App.1930, judgm't adopted) (quoting *Christmas v. Russell,* 81 U.S. (14 Wall) 69, 84, 20 L.Ed. 762 (1871)). "If the holder of the fund retain[s] control of it, it is fatal to the claim of the assignee. There must be some character of delivery, actual or symbolic, or some act to place the fund beyond the control of the

assignor. There must be *a perfected contract between the parties intended to vest in the assignee a present right,* even where the circumstances do not admit of its immediate exercise." *Colleps v. George W. Smith Lumber Co.,* 185 S.W. 1043, 1047 (Tex.Civ.App.—Beaumont 1916, writ dism'd) (emphasis added); *see also Pape,* 737 S.W.2d at 402.

▪ In the case before this Court, the interpled funds at issue first were in the registry of the district court before the Agreed Judgment, and thus beyond the control of any party. *Gibraltar Resources,* 197 B.R. at 253. Property in custodia legis is not subject to garnishment, execution, or levy until the court enters an order of distribution. *Gonzales v. Daniel,* 854 S.W.2d 253, 257 (Tex.App.—Corpus Christi 1993, no writ). The court, however, on July 9, 1993, did issue an order providing that checks be issued to Debtor, even though they were to be delivered to Bell & Murphy. As the district court pointed out in the foregoing affirming appeal,

> Section 547(e)(1)(B) specifies that a transfer of an interest in property other than real property is perfected or complete for purposes of preference avoidance 'when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.' *When a debtor makes an absolute assignment to a creditor, of money that the debtor is entitled to receive from a third party, a transfer is perfected and complete when the assignment is executed rather than when the money is disbursed to the creditor.*

*Ebert v. Dailey Directional Services,* 202 B.R. at 588 (citations omitted) (emphasis added).[5]

Under the Settlement Agreement, Letter, Stipulation, and Agreed Judgment the registrar of the court was to deliver the checks for Debtor to Bell & Murphy, counsel for the interpleader, Lloyd's. Dx. 14 at 3; Dx. 15 at 1; Dx. 16 at 2; Dx. 17 at 3; Dx. 20 at 6. After the delivery, Debtor still had no control over the funds, because the checks had gone

---

**5.** It appears that this transaction is excluded from Article 9 of the Texas UCC. Tex. Bus. & Com.Code Ann. § 9.104(7) & (8) (Vernon 1991); *see Matter of Armando Gerstel, Inc.,* 65 B.R. 602 (S.D.Fla.1986).

directly from the registrar of the court to Bell & Murphy. It was only at the point of endorsement that the checks came within the temporary, limited control of the Debtor while they were being endorsed by the Debtor. Arguably, Debtor could have taken the checks or could have refused to endorse the checks. It is clear, however, that once the checks were properly endorsed payable to the order of Bell & Murphy and delivered to Bell & Murphy, the transfer was complete and the checks once again were beyond control of the Debtor. Therefore, it must be determined if the control exercised by the Debtor during the time of endorsement prevents the second element of an equitable assignment from being satisfied or postpones any equitable absolute assignment until the endorsement date. The registrar of the court did not issue the checks until July 21, 1993, which was after the preference date of July 14, 1993. *Gibraltar Resources*, 197 B.R. at 248; Trustee's Response at 3.

In *Winkler Constr. Co. v. Hornor & Co.*, 580 S.W.2d 401 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.), the court discusses the issue of endorsement and control. In that case a subcontractor assigned its right to receive payment from the general contractor to its supplier in order to continue receiving supplies from the supplier. In a letter, the subcontractor told the general contractor of its arrangement with the supplier and asked the general contractor to make the check payable jointly to both parties, the subcontractor and the supplier. Even though the general contractor accepted this arrangement by signing the letter, it made the check payable only to the subcontractor. The supplier then sued the general contractor and was granted judgment for the amount of the check. The trial court based its judgment on the jury findings that the subcontractor had assigned its claim against the general contractor to the supplier with notice to the general contractor prior to the check being issued. The general contractor appealed arguing that there was no evidence of an effective assignment from the subcontractor to the supplier.

The general contractor based its argument primarily on the fact that the check was to be made jointly payable to the supplier and subcontractor. It argued that the subcontractor's request for joint payment could not be an assignment because the subcontractor had not surrendered control of the funds because negotiation of the check would have required the subcontractor's endorsement. *Id.* at 402. The court of appeals rejected this argument and held that "[b]ecause of its agreement with [the supplier], [the subcontractor] lost the right to exercise a directing or governing influence over the money. *The absence of a right to direct or manage amounts to an absence of the right to control.*" *Id.* at 403 (emphasis added). The court reasoned that "[the subcontractor] had clearly become obligated to furnish such endorsement as the result of its agreement with [the supplier] and had no right to withhold such endorsement." *Id.*

The Trustee contends that *Winkler* is distinguishable from the present case because in that case the assignment involved a joint endorsement. The Trustee further asserts that *Winkler* is distinguishable because in the present case there was no acknowledgment by the obligor. Lastly, the Trustee argues that *Winkler* is distinguishable because it deals with an express assignment, whereas the assignment at issue is an equitable one.

The Trustee does not elaborate on why joint endorsement per se distinguishes *Winkler* from the facts before the Court. It is true that the check at issue before this Court was made payable only to the Debtor and not to the Debtor and Black Max jointly. But, that was the case also in *Winkler*. There, the general contractor was supposed to issue the check jointly payable but actually made the check payable only to the assignor/subcontractor. In spite of this fact, the court still found that there had been an assignment from the subcontractor to the supplier/assignee. The fact that the check was supposed to be issued jointly payable without more, however, was not sufficient to prevent the finding of an equitable assignment. The holding in *Winkler* did not turn on the joint endorsement issue. Rather, the court there focused on the fact that the alleged assignor, the subcontractor, had previously obligated

itself to provide its endorsement had that been necessary. It was the fact that the assignor/subcontractor had obligated itself to provide the endorsement if it were necessary that was the deciding factor in finding that the assignor/subcontractor had relinquished its control over the check.

The Trustee also tries to distinguish *Winkler* by the fact that the issuer of the check, the general contractor, acknowledged in writing that it would issue a check that was jointly payable to the subcontractor and supplier. In that case and in the present case, however, the issue of acknowledgment was and is not a deciding factor. The critical factor was and is the issue of control. Nonetheless, in the present case, the Agreed Judgment entered by the court provided that Debtor's checks would be given to Bell & Murphy for distribution by them. Dxs. 17 & 18 at 2. Moreover, the Debtor agreed to this procedure in the Settlement Agreement and in the Letter sent by Black Max and the Debtor to Bell & Murphy. The Letter and Settlement Agreement constituted an agreement by Debtor to the procedures set forth in the Letter. Finally, the Stipulation filed with the court acknowledges this process. It is clear that the court and all the parties were aware and acknowledged that the Debtor's checks were to be given to Bell & Murphy for distribution by them as set forth in the Settlement Agreement.

The Trustee finally tries to distinguish *Winkler* by arguing that *Winkler* deals with an express assignment, whereas the assignment at issue is an equitable one. It is not clear from the *Winkler* opinion that the assignment at issue was an express one. The court in its recitation of the facts states, "[i]t was finally agreed that [the supplier] would deliver the equipment desired by [the subcontractor] if the latter would *assign* to [the supplier] the amount [the general contractor] owed to [the subcontractor]." *Winkler*, 580 S.W.2d at 401 (emphasis added). The court further states that the supplier's bookkeeper talked to the general contractor who during the course of the conversation "agreed to 'consign' the amount owed to [the subcontractor] 'on a joint payment between [the supplier] and [the subcontractor].'" *Id.* at

402. Nowhere in the remainder of the opinion, however, does the court make clear that there was an express assignment. In fact, other than the language quoted above, there are no words of express assignment in the opinion relating to the transaction in question. Furthermore, by discussing the issue of control, the court seems to imply that the assignment in question there was an equitable one. Regardless, even if it were clear that there was an express assignment in *Winkler*, that would not change this Court's ruling. *Winkler* could still be cited to support the proposition that if an assignor who need only endorse a check to give full and final effect to a transfer and who prior thereto agrees to endorse the check then that agreement is sufficient to take the check out of the control of the assignor.

Prior to the start of the preference period by the terms of the Settlement Agreement, Dx. 14 at 3; *see also* Dx. 15 at 1, Debtor agreed to endorse the checks payable to the order of Bell & Murphy, who would then issue a check to Black Max for $130,000. Debtor also agreed to these procedures in the Letter sent by Black Max and Debtor to Bell & Murphy, which was signed by those parties and "agreed to and accepted" by Bell & Murphy and gave instructions to Bell & Murphy regarding the procedures to be followed with respect to the checks it was to receive from the registrar of the district court.

By July 2, 1993, and before the preference date of July 14, 1993, Debtor had obligated itself to furnish such endorsement and had no right to withhold such endorsement. *Winkler*, 580 S.W.2d at 403; Dxs. 14 & 15. The Stipulation, Dx. 16, was filed with the court by July 7, 1993. Dx. 20. In essence, Debtor had no legal control over the funds because Debtor had contracted away any legal right it had to control the checks. Debtor had bargained away any right to collect the funds directly or to revoke the agreement unilaterally.

■ The limited, temporary control exercised by the Debtor amounted to no more than mere physical control for the moment of check endorsement. This type and amount of control does not rise to a sufficient level of

control to defeat the finding of an equitable assignment. *Winkler*, 580 S.W.2d at 403. Even though Debtor could have refused to endorse or could have walked away with the $147,258.55 check, these acts would have breached Debtor's agreement and would not have given Debtor any more legal right or control than it previously had. The Debtor had no legal right to do anything with the check but endorse it.[6]

Debtor's signing of the Settlement Agreement and Letter were sufficient acts to place the funds beyond the Debtor's control prior to the start of the preference period. The agreements, situation, and actions of the parties vested a present right to the funds in Black Max even though the circumstances did not admit of its immediate exercise. *See Colleps*, 185 S.W. at 1047; *Pape*, 737 S.W.2d at 402.

### Conclusion

The language of the Settlement Agreement, Letter, and Stipulation did not effect an express assignment, but such instruments demonstrated a sufficient intent and relinquishment of control to effect an equitable absolute assignment before the start of the preference period. Based on the foregoing, Movant's motion for summary judgment is **GRANTED.**[7]

A Final Judgment will be entered in accordance with this Amended Memorandum Opinion.

---

6. Paragraph 1 page 3 of the Settlement Agreement refers to Black Max and Lee Mynard on behalf of Atlantis and R.I.G. endorsing the checks, but paragraph 3 of Black Max's Stipulation does not mention Black Max endorsing such judgment checks which were payable to Atlantis and R.I.G. In paragraph 12 of its statement of undisputed facts, Black Max does not mention any endorsements of such Atlantis and R.I.G. checks by Black Max.

7. This Opinion does not address other possible defensive issues mentioned in Black Max's Brief at 21 nor its constructive trust alternative contention. Motion for Reconsideration at 11 n. 4. *see also In re Anchorage Nautical Tours, Inc.*, 102 B.R. 741, 744–45 (9th Cir. BAP 1989).