

# NUMBER 13-07-00570-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ELSA STATE BANK
& TRUST CO.,                                          Appellant,

v.

ALBERTO TREVINO,                                      Appellee.

## On appeal from the 93rd District Court of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Vela
### Memorandum Opinion by Justice Yañez

Appellant, Elsa State Bank & Trust Co. ("the Bank"), appeals the trial court's denial

of its cross-motion for summary judgment, and the granting of summary judgment in favor

of appellee, Alberto Trevino.  By four issues, the Bank contends the trial court erred in

granting summary judgment because (1) Trevino's argument that he did not have an

enforceable contract with the Bank is irrelevant; (2) Trevino's argument that the Bank's

claim against him is barred by res judicata is without merit; (3) Sierra Utilities assigned its

rights to contract proceeds to the Bank, either by express assignment or by equitable assignment;[1] and (4) alternatively, fact issues exist as to whether Sierra Utilities assigned its rights to contract proceeds to the Bank. We affirm.

**Background**

This case involves the effect of a March 28, 2003 letter notifying Trevino, a prime contractor,[2] of the Bank's loan to Sierra Utility and Paving Contractors, Inc. ("Sierra"), a subcontractor. The letter describes a security arrangement by which the Bank requested Trevino to render payments to Sierra by checks made out jointly to Sierra and the Bank. The Bank contends that the letter assigns the contract proceeds to the Bank. Trevino contends that the letter is not an assignment.

The Bank sued Trevino for breach of contract, alleging that (1) its loan to Sierra was secured by a security interest in the contract between Sierra and Trevino; (2) Trevino entered into a "joint check agreement," whereby checks to Sierra were to be made jointly payable to Sierra and the Bank (the March 28, 2003 letter); (3) Trevino breached his contract with the Bank by issuing checks payable solely to Sierra; (4) Sierra refused to deliver the checks to the Bank; and (5) as a result, the Bank suffered damages because $71,631.69 of the loan remained unpaid.

On September 9, 2005, Trevino filed a no-evidence and traditional motion for summary judgment.[3] Trevino argued there is no evidence of a contract between himself

---

[1] By this issue, the Bank also argues that the trial court erred in denying its cross-motion for summary judgment.

[2] Trevino is a partner in T&F Properties.

[3] *See* TEX. R. CIV. P. 166a(c), (i).

2

and the Bank; alternatively, in his traditional motion, he argued his affirmative defenses.

On December 14, 2005, the Bank filed its response and cross-motion for summary judgment. In its cross-motion, the Bank moved for a traditional summary judgment on four grounds: (1) the joint-payee-check agreement is an express contract between the Bank and Trevino; (2) Trevino paid money directly to Sierra, even though he had actual or constructive notice of the assignment of the checks to the Bank; (3) the Bank is a third-party beneficiary that can sue on Sierra's promise that the payment checks would be made jointly payable to Sierra and the Bank; and (4) the Bank relied on Trevino's promise to make the checks jointly payable to Sierra and the Bank, and promissory estoppel precludes Trevino from denying the enforceability of his promise to issue the checks in this manner. As summary judgment evidence, the Bank attached (1) the March 28, 2003 letter, (2) a copy of the promissory note and security agreement between Sierra and the Bank, and (3) excerpts of deposition testimony from Ted Sunderland, the Bank's Executive Vice-President and officer in charge of the Sierra loan; Ramiro Gutierrez;[4] and Trevino.[5]

On October 12, 2006, Trevino filed an amended traditional motion for summary judgment and response to the Bank's cross-motion. Trevino argues that: (1) the Bank's cause of action against him fails as a matter of law because it cannot establish the first element of a breach-of-contract claim—that a valid enforceable contract exists;[6] (2) Trevino

---

[4] Ramiro Gutierrez's relationship to the parties is not apparent from his excerpted testimony.

[5] On January 3, 2006, Trevino filed a response to the Bank's cross-motion for summary judgment. On February 17, 2006, the Bank filed a reply to Trevino's response. Because it is unnecessary to our disposition, we do not detail those arguments here.

[6] In its brief, the Bank asserts that the argument that it has no contract with Trevino is "irrelevant" because Trevino's liability is "not based on a contract directly between Mr. Trevino and [the Bank]," but instead, on "the existence of an assignment of the contract proceeds" from Sierra to the Bank, and a showing that Trevino knew or should have known of the assignment. We conclude the Bank has abandoned any

3

is not liable under an assignment theory; (3) Trevino was not a third-party beneficiary to the loan by the Bank to Sierra; and (4) Trevino is not liable on a theory of promissory estoppel because Trevino made no promise on which the Bank could reasonably have relied. As summary judgment evidence, Trevino attached (1) his contract with Sierra, (2) a copy of the promissory note and security agreement between the Bank and Sierra, (3) a copy of the March 28, 2003 letter, (4) copies of checks from Trevino's company to Sierra, (5) a copy of an original petition in a lawsuit filed by the Bank against Sierra, (6) an excerpt from his own deposition testimony, and (7) an excerpt from Sunderland's deposition testimony. Trevino also argued in his amended motion that the Bank is barred from recovering the unpaid balance of its loan to Sierra from Trevino based on res judicata. Trevino provided a copy of the Bank's suit against Sierra, and argues that Trevino was a necessary party to that suit and that his potential liability could have been litigated in that prior suit.[7]

On August 3, 2007, the Bank filed its response to Trevino's amended motion for summary judgment. In its response, the Bank argued that an assignment existed between Sierra and the Bank, and that Trevino was liable because he knew of the assignment and failed to comply with the request that the checks be made jointly payable. In the alternative, the Bank argued that an equitable assignment can be implied. The Bank also argued its claims against Trevino in the present suit are not barred by res judicata because

argument that it had a "direct" contract with Trevino, and accordingly, we do not discuss the parties' arguments regarding that issue.

[7] Trevino asserts that the Bank obtained a default judgment against Sierra on June 16, 2004, in cause number C-1055-04-B in the 93rd District Court of Hidalgo County, styled *Elsa State Bank & Trust Company v.Sierra Utilities & Paving Contractors, Inc.* A copy of the judgment in that cause was not included in the summary judgment evidence.

Trevino was not a party to the Bank's suit against Sierra, and he was not in privity with Sierra.

On August 20, 2007, the trial court granted Trevino's amended motion for summary judgment. On August 21, 2007, the trial court denied the Bank's cross-motion for summary judgment. This appeal ensued.

## Standard of Review and Applicable Law

Here, both Trevino's amended motion for summary judgment and the Bank's cross-motion for summary judgment are "traditional" motions for summary judgment.[8] We review the trial court's grant of summary judgment de novo.[9] When, as here, both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if it determines the trial court erred, renders the judgment the trial court should have rendered.[10]

When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that none of the independent grounds that were asserted in support of summary judgment is sufficient to support the judgment.[11] Thus, when the trial court's order granting summary judgment does not specify the grounds on which it was granted, we will affirm the summary judgment if any of the advanced theories support the

---

[8] *See* TEX. R. CIV. P. 166a(c).

[9] *Joe v. Two Thirty Nine J. V.*, 145 S.W.3d 150, 156-57 (Tex. 2004); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.).

[10] *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

[11] *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 562-63 (Tex. App.–Dallas 2007, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

judgment.[12]

"A valid assignment requires 'a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or a third person.'"[13] "A transaction that requires a further act to complete a transfer will not effect an assignment.[14] Intent is an essential element.[15]

> There is a distinction, however, between intending to pay out of a particular fund and intending a present transfer of an interest in that fund. "Furthermore, in order to effectuate a valid transfer of an interest in a particular fund, 'the transfer must be such as to leave the assignor with no control over the fund.'" Intending to pay out of a particular fund without a manifestation of intention to make a present transfer merely grants a contractual right; whereas, intending a present transfer of an interest in a fund grants a property right. Thus, for an assignment to be found, it must be clear that the assignor intends to give and the assignee intends to receive present ownership of the fund.[16]

There is also a distinction between an assignment and the creation of a mere lien.[17] The creation of a lien is not an assignment, the two being distinguished by the fact that a lien is merely a charge on property, while an assignment creates an interest in property.[18]

---

[12] *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005) (citing *Provident Life Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)); *Coffey*, 223 S.W.3d at 563.

[13] *Ebert v. Black Max Downhole Tools (In re Gibraltar Resources)*, 211 B.R. 216, 220 (Bankr. N.D. Tex. 1997) (footnote omitted) (quoting *Wolters Village Mgm't Co. v. Merchants and Planters Nat'l Bank of Sherman*, 223 F.2d 793, 798 (5th Cir. 1955)); *see Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.–Fort Worth 2006, no pet.) ; *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.–Houston [14th Dist.] 1987, writ ref'd n.r.e.).

[14] *Ebert,* 211 B.R. at 220.

[15] *Id.*

[16] *Id.* at 220-21 (internal citations and quotations omitted).

[17] *Highland Park State Bank v.Salazar*, 555 S.W.2d 484, 488 (Tex. Civ. App.–San Antonio 1977, writ ref'd n.r.e.).

[18] *Id.*

In certain instances, Texas courts will imply an equitable assignment when no express assignment can be established.[19] To be an equitable assignment, the agreement must evidence an intent to transfer the interest and the transferor must relinquish control over the interest.[20] An equitable assignment can be effected only by a surrender of control over the funds or property assigned.[21] To make an equitable assignment, an equitably constructive appropriation of the subject matter should be made so as to confer a complete and present right in the party for whose benefit the assignment is meant, even where the circumstances do not admit of its immediate exercise.[22]

## Discussion

We begin by addressing the Bank's third issue, that by the March 28, 2003 letter, Sierra assigned its right to contract proceeds to the Bank, either by express assignment or by equitable assignment.[23] The letter, on the Bank's letterhead, stated:

Dear Mr. Trevino:

Effective today, the Elsa State Bank & Trust Co. has extended a loan to Sierra Utility and Paving Contractors, Inc. This loan and other indebtedness is secured in part by your contracts described below:

1.) Contract dated March 13, 2003[,] in the amount of $314,540.00 for the construction of the Alma Delia Subdivision.

Please make all future checks representing payments by you to Sierra Utility and Paving Contractors, Inc. and Elsa State Bank & Trust Co. Joint

---

[19] *Ebert,* 211 B.R. at 221.

[20] *Pape*, 737 S.W.2d at 402.

[21] *Id.*

[22] *Id.*

[23] In his amended motion, Trevino moved for summary judgment on the ground that he is not liable under an assignment theory.

7

payments should continue until obligations to us are paid in full.

Also, by acknowledging below[,] please verify work on this job has commenced and the balance to be paid remaining as stated above totaling $314,540.00.

The letter is signed by Sunderland, Executive Vice President of the Bank. It is "Approved" by Ralph Garcia, President of Sierra, and "Acknowledged" by Trevino.

In support of its argument that Sierra expressly assigned its rights to the contract proceeds to the Bank in the letter, the Bank cites *Winkler Construction Company v. Hornor and Company*.[24] In *Winkler*, a subcontractor assigned its right to receive payment from a general contractor to its supplier in order to continue receiving supplies from the supplier.[25] In a letter, the subcontractor asked the general contractor to make its check payable jointly to the subcontractor and the supplier.[26] Instead, as in the present case, the general contractor made the check payable only to the subcontractor.[27] A jury found that the subcontractor had assigned its claim to the supplier.[28] On appeal, the *Winkler* court affirmed the trial court's judgment.[29] The general contractor argued that no assignment had occurred because the subcontractor's endorsement of the check was required, and therefore, it had not surrendered control of the funds.[30] The *Winkler* court rejected this

---

[24] *Winkler Constr. Co. v. Hornor & Co.*, 580 S.W.2d 401, 403 (Tex. Civ. App.–San Antonio 1979, writ ref'd n.r.e.).

[25] *Id.* at 402.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at 404.

[30] *Id.* at 402.

argument, finding that the evidence established an assignment because (1) "the details of the arrangement [between the subcontractor and the supplier] were complete at the time the letter was delivered to [the supplier]" and (2) the subcontractor was obligated to endorse any check that was jointly payable and had therefore given up its right to control the money.[31]

We find *Winkler* distinguishable from the present case. In *Winkler*, there was testimony that in a telephone conversation, the general contractor (Winkler) had expressly agreed to "consign" a specific amount due to the subcontractor as a joint payment to the supplier and the subcontractor.[32] The letter confirming the agreement stated that Winkler's signature would indicate his "acceptance"; it was signed by Winkler's agent.[33]

Here, the March 28, 2003 letter expressly states that the Bank's loan to Sierra is "secured in part" by Trevino's contracts with Sierra. The security agreement for the loan states that Sierra grants to the Bank a "security interest" in the "collateral" for the loan, which includes:

> ANY AND ALL CONTRACT RECEIVABLES INCLUDING BUT NOT LIMITED TO CONTRACT RECEIVABLE NO. 0004 DATED MARCH 13, 2003 FOR THE CONSTRUCTION OF THE ALMA DELIA SUBDIVISION LOCATED IN ALAMO, TX. BETWEEN CONTRACTOR SIERRA UTILITIES & PAVING CONTRACTORS, INC. AND OWNER ALBERT TREVINO.

This language merely grants the Bank a security interest in Sierra's contract receivables. In addition, under "TERM OF AGREEMENT," the security agreement states: "This Agreement, and the security interest created by the Agreement, will remain in force

---

[31] *Id.* at 403.

[32] *Id.* at 402.

[33] *Id.*

9

until all of the Indebtedness is paid in full, unless the security interest created by this Agreement is earlier released by Secured Party in writing."

In *Coffey v. Singer Asset Finance Company, L.L.C.*,[34] the Dallas court of appeals concluded that a security agreement, which pledged a security interest in the borrowers' future structured settlement payments as collateral for a loan, unambiguously created a lien on the settlement payments, and did not assign the settlement payments to the lender.[35] In its analysis, the court stated:

> In fact, the documents specifically state that appellants pledge their future periodic payments as collateral for loans, and each transaction includes a security agreement creating a security interest in the collateral.
>
> Additionally, the security agreements contain language that terminates the agreements and the security interests when the loans are paid in full. . . . This language supports our conclusion that these transactions are not assignments because the security interests in the collateral terminate upon payment in full of the loan amounts.[36]

We conclude that the security agreement at issue here, like those in *Coffey*, unambiguously created only a security interest in the pledged collateral—Sierra's contract proceeds. We hold that neither the security agreement nor the March 28, 2003 letter constitutes an assignment.[37]

We are also unpersuaded by the Bank's argument that an equitable assignment can be implied under these circumstances. "[T]he two central factors to establish an equitable

---

[34] *Coffey*, 223 S.W.3d at 564-67.

[35] *Id.* at 567.

[36] *Id.* at 566 (citing *McAllen State Bank v. Tex. Bank & Trust Co.*, 433 S.W.2d 167, 171 (Tex. 1968) (stating that one element of a "pledge" is that the right to redeem pledged property remains in the pledgor)).

[37] *See id.* at 566-67.

assignment are an intent to assign and a total relinquishment of control."[38]  If the assignor (here, Sierra) retains any control over the fund, it is fatal to the claim of the assignee.[39]

Neither the letter nor the security agreement contains language sufficient to establish an intent to effect an equitable assignment.  As noted above, the security agreement granted the Bank only a security interest in Sierra's contract proceeds.  We hold that no equitable assignment occurred.  We overrule the Bank's third issue.

### Conclusion

We hold that the trial court did not err in granting Trevino's amended motion for summary judgment and in denying the Bank's cross-motion for summary judgment.  We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and
filed this the 23rd day of April, 2009.

---

[38] *Ebert*, 211 B.R. at 222.

[39] *Id.*