NUMBER 13-07-00570-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS
 


CORPUS CHRISTI - EDINBURG 


 


ELSA STATE BANK 

& TRUST CO., Appellant,


v.



ALBERTO TREVINO, Appellee.

 


On appeal from the 93rd District Court of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Vela


Memorandum Opinion by Justice Yañez


 

 Appellant, Elsa State Bank & Trust Co. ("the Bank"), appeals the trial court's denial
of its cross-motion for summary judgment, and the granting of summary judgment in favor
of appellee, Alberto Trevino. By four issues, the Bank contends the trial court erred in
granting summary judgment because (1) Trevino's argument that he did not have an
enforceable contract with the Bank is irrelevant; (2) Trevino's argument that the Bank's
claim against him is barred by res judicata is without merit; (3) Sierra Utilities assigned its
rights to contract proceeds to the Bank, either by express assignment or by equitable
assignment; (1) and (4) alternatively, fact issues exist as to whether Sierra Utilities assigned
its rights to contract proceeds to the Bank. We affirm. 

Background 


 This case involves the effect of a March 28, 2003 letter notifying Trevino, a prime
contractor, (2) of the Bank's loan to Sierra Utility and Paving Contractors, Inc. ("Sierra"), a
subcontractor. The letter describes a security arrangement by which the Bank requested
Trevino to render payments to Sierra by checks made out jointly to Sierra and the Bank. 
The Bank contends that the letter assigns the contract proceeds to the Bank. Trevino
contends that the letter is not an assignment.

 The Bank sued Trevino for breach of contract, alleging that (1) its loan to Sierra was
secured by a security interest in the contract between Sierra and Trevino; (2) Trevino
entered into a "joint check agreement," whereby checks to Sierra were to be made jointly
payable to Sierra and the Bank (the March 28, 2003 letter); (3) Trevino breached his
contract with the Bank by issuing checks payable solely to Sierra; (4) Sierra refused to
deliver the checks to the Bank; and (5) as a result, the Bank suffered damages because
$71,631.69 of the loan remained unpaid.

 On September 9, 2005, Trevino filed a no-evidence and traditional motion for
summary judgment. (3) Trevino argued there is no evidence of a contract between himself
and the Bank; alternatively, in his traditional motion, he argued his affirmative defenses. 

 On December 14, 2005, the Bank filed its response and cross-motion for summary
judgment. In its cross-motion, the Bank moved for a traditional summary judgment on four
grounds: (1) the joint-payee-check agreement is an express contract between the Bank
and Trevino; (2) Trevino paid money directly to Sierra, even though he had actual or
constructive notice of the assignment of the checks to the Bank; (3) the Bank is a third-party beneficiary that can sue on Sierra's promise that the payment checks would be made
jointly payable to Sierra and the Bank; and (4) the Bank relied on Trevino's promise to
make the checks jointly payable to Sierra and the Bank, and promissory estoppel
precludes Trevino from denying the enforceability of his promise to issue the checks in this
manner. As summary judgment evidence, the Bank attached (1) the March 28, 2003 letter,
(2) a copy of the promissory note and security agreement between Sierra and the Bank,
and (3) excerpts of deposition testimony from Ted Sunderland, the Bank's Executive Vice-President and officer in charge of the Sierra loan; Ramiro Gutierrez; (4) and Trevino. (5) 

 On October 12, 2006, Trevino filed an amended traditional motion for summary
judgment and response to the Bank's cross-motion. Trevino argues that: (1) the Bank's
cause of action against him fails as a matter of law because it cannot establish the first
element of a breach-of-contract claim--that a valid enforceable contract exists; (6) (2) Trevino
is not liable under an assignment theory; (3) Trevino was not a third-party beneficiary to
the loan by the Bank to Sierra; and (4) Trevino is not liable on a theory of promissory
estoppel because Trevino made no promise on which the Bank could reasonably have
relied. As summary judgment evidence, Trevino attached (1) his contract with Sierra, (2) 
a copy of the promissory note and security agreement between the Bank and Sierra, (3)
a copy of the March 28, 2003 letter, (4) copies of checks from Trevino's company to Sierra,
(5) a copy of an original petition in a lawsuit filed by the Bank against Sierra, (6) an excerpt
from his own deposition testimony, and (7) an excerpt from Sunderland's deposition
testimony. Trevino also argued in his amended motion that the Bank is barred from
recovering the unpaid balance of its loan to Sierra from Trevino based on res judicata. 
Trevino provided a copy of the Bank's suit against Sierra, and argues that Trevino was a
necessary party to that suit and that his potential liability could have been litigated in that
prior suit. (7) 

 On August 3, 2007, the Bank filed its response to Trevino's amended motion for
summary judgment. In its response, the Bank argued that an assignment existed between
Sierra and the Bank, and that Trevino was liable because he knew of the assignment and
failed to comply with the request that the checks be made jointly payable. In the
alternative, the Bank argued that an equitable assignment can be implied. The Bank also
argued its claims against Trevino in the present suit are not barred by res judicata because
Trevino was not a party to the Bank's suit against Sierra, and he was not in privity with
Sierra. 

 On August 20, 2007, the trial court granted Trevino's amended motion for summary
judgment. On August 21, 2007, the trial court denied the Bank's cross-motion for summary
judgment. This appeal ensued.

Standard of Review and Applicable Law 


 Here, both Trevino's amended motion for summary judgment and the Bank's cross-motion for summary judgment are "traditional" motions for summary judgment. (8) We review
the trial court's grant of summary judgment de novo. (9) When, as here, both parties move
for summary judgment on the same issues and the trial court grants one motion and denies
the other, the reviewing court considers the summary-judgment evidence presented by
both sides, determines all questions presented, and if it determines the trial court erred,
renders the judgment the trial court should have rendered. (10) 

 When the trial court does not specify the basis for its ruling, it is the appellant's
burden on appeal to show that none of the independent grounds that were asserted in
support of summary judgment is sufficient to support the judgment. (11) Thus, when the trial
court's order granting summary judgment does not specify the grounds on which it was
granted, we will affirm the summary judgment if any of the advanced theories support the
judgment. (12) 

 "A valid assignment requires 'a manifestation to another person by the owner of a
right indicating his intention to transfer, without further action or manifestation of intention,
his right to such other person or a third person.'" (13) "A transaction that requires a further act
to complete a transfer will not effect an assignment. (14) Intent is an essential element. (15)

 There is a distinction, however, between intending to pay out of a
particular fund and intending a present transfer of an interest in that fund. 
"Furthermore, in order to effectuate a valid transfer of an interest in a
particular fund, 'the transfer must be such as to leave the assignor with no
control over the fund.'" Intending to pay out of a particular fund without a
manifestation of intention to make a present transfer merely grants a
contractual right; whereas, intending a present transfer of an interest in a
fund grants a property right. Thus, for an assignment to be found, it must be
clear that the assignor intends to give and the assignee intends to receive
present ownership of the fund. (16)


 There is also a distinction between an assignment and the creation of a mere lien. (17) 
The creation of a lien is not an assignment, the two being distinguished by the fact that a
lien is merely a charge on property, while an assignment creates an interest in property. (18)

 In certain instances, Texas courts will imply an equitable assignment when no
express assignment can be established. (19) To be an equitable assignment, the agreement
must evidence an intent to transfer the interest and the transferor must relinquish control
over the interest. (20) An equitable assignment can be effected only by a surrender of control
over the funds or property assigned. (21) To make an equitable assignment, an equitably
constructive appropriation of the subject matter should be made so as to confer a complete
and present right in the party for whose benefit the assignment is meant, even where the
circumstances do not admit of its immediate exercise. (22) 

Discussion


 We begin by addressing the Bank's third issue, that by the March 28, 2003 letter,
Sierra assigned its right to contract proceeds to the Bank, either by express assignment
or by equitable assignment. (23) The letter, on the Bank's letterhead, stated:

Dear Mr. Trevino:


 Effective today, the Elsa State Bank & Trust Co. has extended a loan
to Sierra Utility and Paving Contractors, Inc. This loan and other
indebtedness is secured in part by your contracts described below:


 1.) Contract dated March 13, 2003[,] in the amount of $314,540.00
for the construction of the Alma Delia Subdivision.


 Please make all future checks representing payments by you to Sierra
Utility and Paving Contractors, Inc. and Elsa State Bank & Trust Co. Joint
payments should continue until obligations to us are paid in full.


 Also, by acknowledging below[,] please verify work on this job has
commenced and the balance to be paid remaining as stated above totaling
$314,540.00.


The letter is signed by Sunderland, Executive Vice President of the Bank. It is "Approved"
by Ralph Garcia, President of Sierra, and "Acknowledged" by Trevino. 

 In support of its argument that Sierra expressly assigned its rights to the contract
proceeds to the Bank in the letter, the Bank cites Winkler Construction Company v. Hornor
and Company. (24) In Winkler, a subcontractor assigned its right to receive payment from a
general contractor to its supplier in order to continue receiving supplies from the supplier. (25) 
In a letter, the subcontractor asked the general contractor to make its check payable jointly
to the subcontractor and the supplier. (26) Instead, as in the present case, the general
contractor made the check payable only to the subcontractor. (27) A jury found that the
subcontractor had assigned its claim to the supplier. (28) On appeal, the Winkler court
affirmed the trial court's judgment. (29) The general contractor argued that no assignment
had occurred because the subcontractor's endorsement of the check was required, and
therefore, it had not surrendered control of the funds. (30) The Winkler court rejected this
argument, finding that the evidence established an assignment because (1) "the details of
the arrangement [between the subcontractor and the supplier] were complete at the time
the letter was delivered to [the supplier]" and (2) the subcontractor was obligated to
endorse any check that was jointly payable and had therefore given up its right to control
the money. (31) 

 We find Winkler distinguishable from the present case. In Winkler, there was
testimony that in a telephone conversation, the general contractor (Winkler) had expressly
agreed to "consign" a specific amount due to the subcontractor as a joint payment to the
supplier and the subcontractor. (32) The letter confirming the agreement stated that Winkler's
signature would indicate his "acceptance"; it was signed by Winkler's agent. (33) 

 Here, the March 28, 2003 letter expressly states that the Bank's loan to Sierra is
"secured in part" by Trevino's contracts with Sierra. The security agreement for the loan
states that Sierra grants to the Bank a "security interest" in the "collateral" for the loan,
which includes: 

ANY AND ALL CONTRACT RECEIVABLES INCLUDING BUT NOT
LIMITED TO CONTRACT RECEIVABLE NO. 0004 DATED MARCH 13,
2003 FOR THE CONSTRUCTION OF THE ALMA DELIA SUBDIVISION
LOCATED IN ALAMO, TX. BETWEEN CONTRACTOR SIERRA UTILITIES
& PAVING CONTRACTORS, INC. AND OWNER ALBERT TREVINO.


 This language merely grants the Bank a security interest in Sierra's contract
receivables. In addition, under "TERM OF AGREEMENT," the security agreement states: 
"This Agreement, and the security interest created by the Agreement, will remain in force
until all of the Indebtedness is paid in full, unless the security interest created by this
Agreement is earlier released by Secured Party in writing." 

 In Coffey v. Singer Asset Finance Company, L.L.C., (34) the Dallas court of appeals
concluded that a security agreement, which pledged a security interest in the borrowers'
future structured settlement payments as collateral for a loan, unambiguously created a
lien on the settlement payments, and did not assign the settlement payments to the
lender. (35) In its analysis, the court stated:

In fact, the documents specifically state that appellants pledge their future
periodic payments as collateral for loans, and each transaction includes a
security agreement creating a security interest in the collateral.


Additionally, the security agreements contain language that terminates the
agreements and the security interests when the loans are paid in full. . . .
This language supports our conclusion that these transactions are not
assignments because the security interests in the collateral terminate upon
payment in full of the loan amounts. (36) 


 We conclude that the security agreement at issue here, like those in Coffey,
unambiguously created only a security interest in the pledged collateral--Sierra's contract
proceeds. We hold that neither the security agreement nor the March 28, 2003 letter
constitutes an assignment. (37)

 We are also unpersuaded by the Bank's argument that an equitable assignment can
be implied under these circumstances. "[T]he two central factors to establish an equitable
assignment are an intent to assign and a total relinquishment of control." (38) If the assignor
(here, Sierra) retains any control over the fund, it is fatal to the claim of the assignee. (39) 

 Neither the letter nor the security agreement contains language sufficient to
establish an intent to effect an equitable assignment. As noted above, the security
agreement granted the Bank only a security interest in Sierra's contract proceeds. We
hold that no equitable assignment occurred. We overrule the Bank's third issue.

Conclusion 


 We hold that the trial court did not err in granting Trevino's amended motion for
summary judgment and in denying the Bank's cross-motion for summary judgment. We
affirm the trial court's judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice


Memorandum Opinion delivered and 

filed this the 23rd day of April, 2009.

 



 
1. By this issue, the Bank also argues that the trial court erred in denying its cross-motion for summary
judgment.
2. Trevino is a partner in T&F Properties. 
3. See Tex. R. Civ. P. 166a(c), (i).
4. Ramiro Gutierrez's relationship to the parties is not apparent from his excerpted testimony.
5. On January 3, 2006, Trevino filed a response to the Bank's cross-motion for summary judgment. 
On February 17, 2006, the Bank filed a reply to Trevino's response. Because it is unnecessary to our
disposition, we do not detail those arguments here. 
6. In its brief, the Bank asserts that the argument that it has no contract with Trevino is "irrelevant"
because Trevino's liability is "not based on a contract directly between Mr. Trevino and [the Bank]," but
instead, on "the existence of an assignment of the contract proceeds" from Sierra to the Bank, and a showing
that Trevino knew or should have known of the assignment. We conclude the Bank has abandoned any
argument that it had a "direct" contract with Trevino, and accordingly, we do not discuss the parties' arguments
regarding that issue. 
7. Trevino asserts that the Bank obtained a default judgment against Sierra on June 16, 2004, in cause
number C-1055-04-B in the 93rd District Court of Hidalgo County, styled Elsa State Bank & Trust Company
v.Sierra Utilities & Paving Contractors, Inc. A copy of the judgment in that cause was not included in the
summary judgment evidence. 
8. See Tex. R. Civ. P. 166a(c).
9. Joe v. Two Thirty Nine J. V., 145 S.W.3d 150, 156-57 (Tex. 2004); Branton v. Wood, 100 S.W.3d
645, 646 (Tex. App.-Corpus Christi 2003, no pet.). 
10. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
11. Coffey v. Singer Asset Fin. Co., 223 S.W.3d 559, 562-63 (Tex. App.-Dallas 2007, no pet.) (citing
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)). 
12. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005) (citing Provident Life Ins. Co. v. Knott, 128
S.W.3d 211, 216 (Tex. 2003)); Coffey, 223 S.W.3d at 563. 
13. Ebert v. Black Max Downhole Tools (In re Gibraltar Resources), 211 B.R. 216, 220 (Bankr. N.D.
Tex. 1997) (footnote omitted) (quoting Wolters Village Mgm't Co. v. Merchants and Planters Nat'l Bank of
Sherman, 223 F.2d 793, 798 (5th Cir. 1955)); see Commercial Structures & Interiors, Inc. v. Liberty Educ.
Ministries, Inc., 192 S.W.3d 827, 833 (Tex. App.-Fort Worth 2006, no pet.) ; Pape Equip. Co. v. I.C.S., Inc.,
737 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e). 
14. Ebert, 211 B.R. at 220.
15. Id. 
16. Id. at 220-21 (internal citations and quotations omitted).
17. Highland Park State Bank v.Salazar, 555 S.W.2d 484, 488 (Tex. Civ. App.-San Antonio 1977, writ
ref'd n.r.e.). 
18. Id. 
19. Ebert, 211 B.R. at 221. 
20. Pape, 737 S.W.2d at 402. 
21. Id. 
22. Id. 
23. In his amended motion, Trevino moved for summary judgment on the ground that he is not liable
under an assignment theory.
24. Winkler Constr. Co. v. Hornor & Co., 580 S.W.2d 401, 403 (Tex. Civ. App.-San Antonio 1979, writ
ref'd n.r.e.). 
25. Id. at 402. 
26. Id. 
27. Id. 
28. Id. 
29. Id. at 404. 
30. Id. at 402. 
31. Id. at 403. 
32. Id. at 402. 
33. Id. 
34. Coffey, 223 S.W.3d at 564-67. 
35. Id. at 567. 
36. Id. at 566 (citing McAllen State Bank v. Tex. Bank & Trust Co., 433 S.W.2d 167, 171 (Tex. 1968)
(stating that one element of a "pledge" is that the right to redeem pledged property remains in the pledgor)). 
37. See id. at 566-67.
38. Ebert, 211 B.R. at 222.
39. Id.